1820.

GOODRICH
v.
PENDLETON

Motion denied.

---

GOODRICH, Administrator, with the will annexed, of P. MILLER, *against* PENDLETON.

The *Surrogate* of the *City and County of New-York,* has no authority to grant letters of administration with the *will annexed,* of a person residing out of the state.

By the acts, (1 *N. R. L.* 449. *Sess.* 36. *ch.* 79. *sec.* 17. *Sess.* 38. *ch.* 157.) the *Surrogate's* powers, in this respect, are limited to the case of a non-resident of the state dying *intestate, and leaving goods and chattels in the City of New-York.*

That the plaintiff who sues as administrator, has not actually taken out letters of administration, or that the letters of administration were not granted by an officer having competent authority to grant them, in the particular case, may be objected to by plea, or in the answer, or by demurrer; and if insisted on at the hearing, the bill will be dismissed. But if letters of administration are duly taken out any time before the hearing, it will be sufficient, and may be charged by way of supplement, or amendment.

BILL for an account and payment of moneys received by the defendant for and on behalf of the testator. *August 19th.*

It appeared, by the bill, that *Ph. Miller,* the testator, was an inhabitant of the state of *Georgia,* and died there, and

**1820.**

GOODRICH
v.
PENDLETON.

that his widow, *Catharine Miller,* was one of the executors of his will, and took upon herself, exclusively, the trust, and acted as an executrix; and the claim in the bill was founded upon dealings by the defendant with her in that character. She was an inhabitant of *Georgia,* and died there, and the defendant was an inhabitant of *Dutchess* county, in this state. Letters of administration, with the will annexed, were granted to the plaintiff by the Surrogate of the City of *New-York.* It did not appear either in the pleadings or proofs, what right or title the plaintiff had to take out letters of administration, or that the testator left any goods or chattels in the City of *New-York.*

The defendant, in his answer, and also at the hearing, insisted, that the plaintiff was not the lawful representative of *Ph. Miller,* and had no right or title to sue in that character, inasmuch as he showed no authority as administrator from the Court of Probates of this state.

The cause was argued at the last term, briefly upon this point, and at large upon the merits.

*Boyd* and *Riggs,* for the plaintiff.

The defendant, in proper person, and *Hoffman,* contra.

As to the above point, was cited the *Statute,* 1 *N. R. L.* 444. sect. 3. 15. 17. and *Weston* v. *Weston,* 14 *Johns. Rep.* 428.

THE CHANCELLOR. The point that meets us at the very threshold of this case, and which seemed to be very lightly touched at the hearing, has appeared to me, upon examination, to be insurmountable. I cannot discover that the Surrogate of *New-York* had authority to grant letters of administration in this case, and the plaintiff, therefore, shows no title to appear in the character he has assumed.

It is not without regret that I have arrived at this conclu-
sion, considering that this cause has been brought to a hear-
ing, at great expense, and discussed fully upon its merits.
But though the objection may appear to be quite formal and
technical, the defendant has certainly a right to insist that
the person who undertakes to call him to an account, should
have competent authority to do so, and he is entitled to
question the validity of the plaintiff's commission.  Such
an objection was allowed in the case of *Winn* v. *Fletcher*,
(1 *Vern.* 473.) to be good, by way of plea ; and there the
defendant pleaded that the plaintiff was not an adminis-
trator, as he averred himself to be. In *Fell* v. *Lutwidge*, (2
*Atk.* 120.  *Barnard Ch. Rep.* 319.) the exception was ta-
ken, for the first time, at the hearing, that the plaintiff had
not taken out letters of administration until long after the
bill was filed; and though Lord *Hardwicke* overruled the
exception, it was not because it was too late, but on the
ground that procuring letters of administration before the
cause was brought to a hearing, was sufficient.  Here the
objection was put forward distinctly in the answer ; and it
may as well be made in the answer as by plea.  The gene-
ral rule is, that after a plea has been overruled, the same de-
fence may be insisted on by way of answer.  (2 *Vesey*, 491.
3 *P. Wms.* 95.  *Redesdale's Tr.* 244.)  And as the objec-
tion was taken from the answer, and made a point at the
hearing, the counsel for the plaintiff did not attempt to re-
sist it on that ground.  They met the objection on its me-
rits, by insisting that the Surrogate of *New-York had* com-
petent power to grant letters of administration, in the given
case.

In the note to the case of *Cleland* v. *Cleland*, (*Prec. in
Ch.* 63.) it is stated, that the objection that the adminis-
trator was not made a party defendant to a suit, was over-
ruled, because the wife was charged as administratrix, and
confessed in her answer, that she had possessed and admi-
nistered the personal estate of her deceased husband, though

After a plea
is overruled,
the same de-
fence may be
insisted on by
way of answer.

Though a person is legal ly entitled to administration, he cannot sue, without taking regular letters of administration.

she denied, by answer, that she had taken out letters of administration. The objection was, probably, raised by her at the hearing, and, perhaps, she was thought to be concluded by her acts; and the note adds, also, that she was *the person by law entitled to administration.* That last circumstance clearly was not sufficient to dispense with the letters of administration from the proper source. In *Humphreys* v. *Humphreys,* (3 *P. Wms.* 348.) the next of kin entitled to administer, sued, without letters of administration, and a demurrer to the bill for that cause, was allowed. But that case, like the one of *Fell* v. *Lutwidge,* might have taught the plaintiff, after the admonition given in the answer, how easily the defect was to be cured. Letters of administration were taken out, in that case, and charged by way of amendment to the bill; and the Lord Chancellor held, that the fact might be charged, either by way of supplement or amendment.

The plaintiff does not appear to have had any particular right or claim to sue out letters of administration on the estate of the testator; and his title to sue is destitute of every adventitious aid and presumption. We are driven, therefore, to discuss the strict point of law, whether the *surrogate* had jurisdiction in the case.

Jurisdiction of the Court of Probates.

The Court of Probates, consisting of a single Judge, was recognized in the 27th article of the Constitution; and by the act of the 16th of *March,* 1778, *organizing the government,* the Judge of that Court was declared to be vested with all and singular the powers and authorities, and to have the like jurisdiction, in testamentary matters, which the governor of the colony of *New-York* had exercised, as Judge of the Prerogative Court, or Court of Probates of the colony. Under this authority, the Court of Probates issued, exclusively, letters testamentary, and letters of administration, upon proof taken, as well by the *surrogates,* as in that Court; and this practice was continued until the

power of the Surrogates was enlarged by the act of the 20th <span>1820.</span>
of *February*, 1787. (Sess. 10. ch. 38.)

Under the last act, *Surrogates* in each county were au-
thorized to grant letters testamentary, and letters of admi-
nistration with the will annexed, and letters of administra- <span>Of surrogates.</span>
tion of persons dying intestate " within their respective
counties;" and the same were declared to be as valid as if
issued by the Court of Probates. But in all cases of per-
sons dying " out of this state," or within this state, " not
inhabitants thereof," their wills were to be proved, and ad-
ministration of their personal estates granted by the Judge
of Probates, "in the manner heretofore used, *and before, or
by no other person.*"

The revised act of the 27th of *March*, 1801, declared,
also, that the Judge of the Court of Probates, was vested
with all the powers and authorities of the Court of Probates
of the colony of *New-York*, " except as was therein other-
wise provided;" and in that act, the powers of the Surrogates
were continued, with some little alteration in the phraseology
of the provisions. The Surrogates were declared, by the
third section of the act, to have, " except as to persons who
may not, at the time of their decease, be inhabitants of this
state," the sole and exclusive power to grant letters testa-
mentary, and letters of administration of the goods of per-
sons dying intestate, or with the will annexed, of all de-
ceased persons who, " at, or immediately previous to their
death, shall have been inhabitants of the respective coun-
ties of such Surrogates, in whatever place the death of such
persons may have happened." And in the 12th section of
the act, it was declared, that in all cases of persons dying
" out of this state," or of persons dying within this state,
" not inhabitants of this state," their wills may be proved
before, and administrations of their personal estates granted
by, the Judge of Probates, " in the manner heretofore used,
as well as by any of the said Surrogates."

These words, *as well as by any of the said Surrogates*, are a substitute for the words, *and before or by no other person*, in a similar section in the act of 1787; and, upon the first impression, it would seem to have been intended to give the Surrogates *concurrent* jurisdiction with the Judge of Probates, in the case of persons not inhabitants of this state, as the former section had already given them *exclusive* jurisdiction, where the persons dying were inhabitants. But these provisions in the act of 1801, having been literally transcribed into the new revised act of 1813, (1 *N. R. L.* p. 444.) received a judicial exposition in the Supreme Court in *Weston* v. *Weston.* (14 *Johns. Rep.* 428.) It was there solemnly adjudged, that the Surrogate of the county of *Onondaga*, had no authority to grant letters of administration upon the estate of a person dying out of the state, and not being an inhabitant of it. The words, " as well as by any of the Surrogates," were taken distributively, and applied *only* to that part of the section which was supposed to give to the Judge of Probates, power as to persons dying out of this state, who were at, or immediately previous to their death, inhabitants of the state. The 3d section of the act had already given the Surrogates *exclusive* power in the case of inhabitants of this state, " in whatever place the death of such persons may have happened." There is still a difficulty in supposing, as the case of *Weston* v. *Weston* seems to suppose, that the other section (being the 15th of the act of 1813) intended to give any *concurrent* power to the Judge of Probates, in the case of persons dying out of this state, who were inhabitants of it, and absent *animo revertendi*, or, in the words of the act of 1787, who died " while absent from home, upon a journey on business." The 3d section of the act of 1813, gave " sole and exclusive power," in such case, to the Surrogates; and could the 15th section have meant any thing so repugnant to that 3d section, as to give the Court of Probates " concurrent" power in that case? If, in order to reconcile both parts of

the act on this point, we construe the 15th section as meaning to give to the Court of Probates, jurisdiction in the case only of persons dying without, or dying within the state, *not being inhabitants of it*, then the words *as well as by any of the said Surrogates*, become senseless, unless they are to be construed as giving a concurrent jurisdiction to the Surrogate, and the Judge of Probates, in the case of persons not inhabitants of this state. There is no absolute and irreconcilable inconsistency between the 3d and 12th sections of the act of 1801, or the 3d and 15th sections of the act of 1813, on this construction, giving to the Surrogates exclusive jurisdiction in the case of inhabitants of this state, and concurrent jurisdiction in the case of persons not inhabitants of this state. The exception in the third section, applies to their *exclusive* jurisdiction, for it is declared, that *except as to persons* not inhabitants, they shall have *full and exclusive* jurisdiction; and the statute may, afterwards, have given to them *concurrent* power as to persons not inhabitants, without overthrowing the exception.

I should, therefore, have had doubts upon the construction given to the Surrogate's powers by the decision in *Weston* v. *Weston*, if the question had arisen, *de novo*, before me; but I do not feel myself at liberty to seek after another construction, in opposition to such high authority; and especially in a case where the point came properly and directly before the Supreme Court. It would be a great public inconvenience, and tend to render the law vague and uncertain, to introduce conflicting decisions upon the construction of the powers of public officers, when those powers are in constant activity.

Assuming, then, (as I think I am bound to do, under a proper sense of respect and comity) the authority and validity of the construction given to the Surrogate's powers, by the case of *Weston* v. *Weston*, we are next to inquire, whether the Surrogate of the city of *New-York* has other and greater powers, in the given case.

1820.

GOODRICH
v.
PENDLETON.

Surrogate of
the city of
New-York.

The act of 1801, directed administration to be granted, without sureties, to the *Chamberlain* of the city of *New-York*, in the case of " any person dying intestate within the city and county of *New-York*," and in case the widow, or next of kin, should not apply within one week. But the administration was to be granted by the Surrogate, or the Judge of the Court of Probates, " *as the case might be ;*" and it, accordingly, left the powers distributed between the Surrogate and the Judge of Probates, as it found them. The act of 31st *March*, 1802, (Sess. 25. ch. 83.) extended the above provision to " all cases of persons not resident within this State, who may die intestate, leaving goods and chattels within the city and county of *New-York*, whether such intestate shall die within this state or not." These two provisions were consolidated and transcribed into the revised act of 1813; (1 *N. R. L.* 449. s. 17.) but the question of jurisdiction between the Judge of Probates and the Surrogates, was not touched, altered, or affected, by any new or different provision. The power was still to be exercised by the Surrogate or Judge of the Court of Probates, " as the case might be." Each officer was left to move in the particular sphere in which the law had previously placed him.

The act of the 11th of *April*, 1315, (Sess. 38. ch. 157.) substituted a *public administrator* for the city of *New-York*, in lieu of the *Chamberlain*, in the above case ; and the consolidated provision in the act of 1802, was re-enacted in the same words, but with additional provisions, which would seem, *by implication*, to have given jurisdiction to the Surrogate, even to the extent of the whole case, as stated in the act of 1802. It declares, that if the widow, or next of kin, shall not apply within thirty days after such citation, *as is therein after directed*, to the Surrogate or Judge of the Court of Probates, " as the case may be," for administration, that then administration was to be granted to the public administrator. The citation, therein directed, is to be issued, not

by the Judge of Probates, but by *the Surrogate*, to the widow and next of kin, " to appear and show cause, why such administration should not be granted;" and before whom are they to appear and show cause? If before the Surrogate, as the provision would seem necessarily to imply, it then equally implies that the Surrogate may grant letters of administration in the case, which is, *if any person, not resident within this State, dying intestate, leaving goods and chattels within the city and county of New-York, whether such intestate shall die within this state or not.*

But, if it be admitted, that the Surrogate of *New-York* has greater powers than the Surrogate of *Onondaga* county, it is only in the case of persons dying *intestate*, and *leaving goods and chattels within the city and county of New-York.* All the special powers (if any there be) granted to the Surrogate of *New-York*, in extension of the ordinary jurisdiction of the Surrogate, are confined to the case of persons resident abroad, dying *intestate*, and leaving goods and chattels in *New-York.* The revised act of 1813, in the 3d, and again in the 10th section, has clearly noticed, and marked the distinction between an administration upon the estate of a person dying intestate, and an administration with the will annexed; yet, in the 17th section of this act, and in the subsequent acts on that subject, the distinction so material in itself, so well known in law, and so familiar in the language of the Legislature, is omitted, and the new and special provisions for the city of *New-York*, are confined to the case of persons dying *intestate.*

In the case before me, *Phineas Miller* did not die intestate. He made a will, appointed executors, and one of them administered, and her powers and acts are recognized in the plaintiff's case: nor does it appear that *Ph. Miller*, the testator, left any goods and chattels in the city of *New-York.* If the claim upon the defendant be goods and chattels, yet the bill admits that the defendant resided in *Dutchess* county. Debts due by specialty are said to be *bona notabilia*, in the

place where they are, that is, where the creditor resided and died, and not where the debtor inhabits; but debts due by simple contract are *bona notabilia* where the debtor resides. *(Godol. Orp. Leg.* 70.) There is nothing in this case, therefore, that can help the plaintiff. To give to the Surrogate of *New-York*, a broader jurisdiction than the country Surrogates possess, it ought to have been distinctly shown, or made to appear, that *Ph. Miller* died intestate, and left goods and chattels in the city of *New-York*.

There may be no good reason why the Surrogate of *New-York* should not have power to grant letters testamentary upon testators' wills, as well as letters of administration upon intestates' estates; and it might be very convenient that he should have the power; but if it is not contained in the statute, it certainly cannot be assumed. The *argumentum ab inconvenienti* cannot be applied to extend the limits of power, when the language of the statute, defining the limit, is explicit, and its meaning clear, without any visible mixture of injustice or absurdity.

The power of proving wills, and granting administration, was originally vested in the Court of Probates; and though most of its jurisdiction is now transferred to the Surrogates, that is still the Court of Appeals from the acts of the Surrogates, and it is the Court of general jurisdiction over the subject matter. There is some analogy, therefore, between the powers of the Surrogate and of the *Ordinary*, in *England*, and between the Judge of Probates and the *Metropolitan* of the province; and the rule may be applied to the Surrogate, which is applied to the *Ordinary*, that if he grants administration in a case not within his authority, but in one that belongs to the *Metropolitan*, the same is absolutely void. (*Allison* v. *Dickenson, Hardres,* 216. *Holt, Ch. J.* in *Blackborough* v. *Davis,* 1 *P. Wms.* 41. *Hilliard* v. *Cox,* 1 *Salk.* 37. *Godol.* 70.) It is, also, a general principle, applicable to all Courts of limited jurisdiction, that they must act within the limits of their authority; and it must appear upon the

face of their proceedings, that they did so, or their acts will be deemed *coram non judice*, and void.

I feel, therefore, constrained (however reluctantly) to declare, that the plaintiff has not shown a title to sue here, as the representative of *Phineas Miller*, deceased, and that the bill must be dismissed; and I shall do it without costs, and without prejudice.

Decree accordingly.