## HART and others *vs.* COLTRAIN.

Letters of administration granted by the judge of probates of this state, (previous to the office of judge of probates being abolished,) upon the estate of a person not an inhabitant of this state, and who did not die within this state, are good and valid, although the deceased left no personal assets within this state, he being however, at the time of his death, seized of real estate situate here.

THIS was an action of *ejectment*, tried at the Cayuga circuit in October, 1835, before the Hon. DANIEL MOSELEY, one of the circuit judges.

The plaintiffs are the heirs at law of Jacob Hart, of Wilkesbarre, in the state of Pennsylvania, who died seized of the premises in the year 1811.  The defendant made title

to the premises under a sale thereof by virtue of an order of the judge of the *court of probates* of this state, made 4th August, 1814, on the petition of one David Ogden, to whom letters of administration on the estate of Jacob Hart had been granted by the judge of the court of probates in the preceding month of March. This title the plaintiffs attempted to impeach, by calling in question the jurisdiction of the judge of probates to grant administration. The facts were as follows ; On the 18th February, 1814, Ogden presented a petition to the judge of probates, stating, among other things, that Jacob Hart, late of Pennsylvania, died intestate, without this state—" that the said Jacob Hart at the time of his death left no personal property within this state," but left certain real estate therein ; that the petitioner was a creditor of Hart, and praying letters of administration. On the 22d March, 1814, letters were granted. On the next day, (March 23d,) the administrator filed an inventory, stating that there was *no personal estate;* and also presented a petition to the judge of probates for the sale of the real estate, for the payment of debts. On the same day the judge made an order that all persons interested in the estate should show cause, &c. ; and on the 4th August, 1814, he made an order for the sale. On the 3d of November following, the premises in question were; in pursuance of the order, sold and conveyed to the defendant by the administrator.

The defendant objected to the evidence offered by the plaintiffs to show that the judge had no jurisdiction, but the objection was overruled. The circuit judge charged the jury, that the defendant had failed in establishing a title, and the plaintiffs were entitled to a verdict. The jury found for the plaintiffs. A motion is now made for a new trial.

*M. T. Reynolds,* for defendant.

*B. Davis Noxon,* for plaintiffs.

*By the Court,* BRONSON, J. The jurisdiction of the late court of probates, although it has several times come under consideration, seems never to have been very accurately

defined; *Goodrich* v. *Pendleton*, 4 Johns. Ch. 549 ; *Vander-heyden* v. *Reid*, Hopk. 408 ; and it will not be necessary to go much at large into the question on the present occasion. The plaintiffs go back of the petition and proceedings for the sale of the real estate, and attack the letters of administration. In England, if the *bishop* or inferior judge grant probate or administration when it does not belong to him, the proceeding is *void ;* but if granted by the *metropolitan* when it does not belong to him, it is only *voidable,* and is of force until reversed. The late court of probates exercised appellate jurisdiction over the surrogates, and was for some purposes a court of general jurisdiction. But without stopping to enquire whether the grant of administration by the judge of that court can be questioned in a collateral proceeding, I think the plaintiffs have not succeeded in impeaching the jurisdiction of the court. It is said that it appeared affirmatively by the petition for administration, that there was no personal property of Hart within this state. The allegation in the petition was, that Hart, " *at the time of his death,* left no personal property within this state." He died in 1811, and there may have been assets in 1814, when administration was granted. It must be admitted, however, that the inventory filed the next day after the letters were issued, furnishes very strong evidence that there were no assets at the time administration was granted ; and I shall assume the existence of that fact in the further examination of the case.

As Hart was not an inhabitant of this state at the time of his death, none of the surrogates had jurisdiction ; and if administration could be granted at all, it is not denied that the judge of the court of probates was the proper officer. 1 R. L. 444, § 1, 3, 15. *Weston* v. *Weston,* 14 Johns. R. 428. These proceedings were had while the act of 1813 was in force, and under that act I think the jurisdiction of the proper officer to take the proof of wills and grant administration did not, in any case, turn on the question of *assets.* The first section declared the general jurisdiction of the judge of the court of probates. The 15th section provided, " that in all cases of persons dying out of this state,

or of persons dying within this state, not inhabitants of this state, their wills may be proved before, and administrations of their personal estates, when necessary, be granted by the judge of the court of probates." The jurisdiction of the officer depended on the fact that the person died out of this state, or died within it not being an inhabitant; and not on the question whether the deceased left assets within the state. The surrogates of the several counties had a more limited jurisdiction in relation to the proof of wills and the grant of administration; but their powers did not depend on the question of assets, but on the fact that the deceased person, at or immediately previous to his death, was an inhabitant of the same county with the surrogate. § 3. Under the present law, the question of assets may in some cases go to the jurisdiction of the officer. 2 R. S. 73, § 23, 24. But in granting letters testamentary and of administration under the act of 1831 and the prior statutes, it never was, I believe, the practice of our courts to make any enquiry concerning the personal estate of the deceased, except for the single purpose of regulating the amount of bail in cases of intestacy.

The construction I have given to the act of 1813, derives some force from subsequent legislation. By the act of 1823 the court of probates was abolished, and the powers of that court under the 15th section of the act of 1813, in relation to persons dying out of this state, or within it, not being inhabitants thereof, were devolved on the surrogates; but it was with this qualification, that the probate of wills and grant of administration belonging to the surrogate of the county wherein the personal property of the deceased, or any part thereof, might be at the time of his death. Statutes, sess. of 1823, p. 62, §. 1, 2. This qualification was undoubtedly introduced for the single purpose of determining what particular surrogate should have jurisdiction; but it was soon found that it had a more important influence—that the whole jurisdiction of the court of probates had not been transferred; and an act was passed the next year, providing, "that in all cases of persons dying without this state, not being inhabitants thereof, and without leaving any goods, or chat-

tels within this state, letters of administration may be grant-
ed by the surrogate of any county in this state, in the man-
ner and according to the powers heretofore used and exer-
cised by the judge of the court of probates." Statutes, sess. of
1824, p. 322, ch. 261. It would be difficult to frame a more
explicit recognition of the power of the court of probates to
grant administration without reference to the question of
assets, than is contained in this statute.

It is said that administration is only granted for the pur-
pose of reaching the goods, chattels and credits of the intestate.
If the remark were well founded, it would only prove the
letters useless—not that they are void for the want of juris-
diction. But although the letters are granted with a primary
reference to the personal assets, and do not per se confer
any authority on the administrator over the lands of the deceas-
ed, yet when the personalty proves insufficient for the
payment of debts, the administrator may have an order for
the sale of the real estate. Under the act of 1813, although
it should appear affirmatively that there was no personal
estate, I think the judge or surrogate might grant adminis-
tration with a direct view to the sale of the real estate of the
deceased. If he could not, there would then be no remedy
for a creditor in a case where the heir at law resided out of
the state, although there might be an abundance of real
property to satisfy all claims upon the intestate. The case
of *Goodwin* v. *Jones*, 3 Mass. R. 514, will be found to have an
important bearing upon this question. Whether under the
existing law a case may not happen in which there will be
no power to grant administration, although there may be
creditors and real property of the deceased within this state,
is a question which need not now be considered. 2 R. S. 73,
§ 23, 24.

New trial granted.