### WAMBAUGH vs. GATES and others.

Where a testator devised one parcel of his real estate to his son P., charged with the payment of a legacy to his sister B., and devised his homestead to his son S., charged with the payment of legacies of $500 each, to the testator's four youngest daughters; and gave a legacy to his son J., and devised his Pennsylvania farm to the children of his son J., charged with the payment of a legacy to a granddaughter, and appointed his sons P. and S. his executors, who proved the will and took out letters testamentary thereon; and S. conveyed the homestead farm to his brother P., who conveyed the same, together with the lands devised to him by his father, to D. and E.; and W., a creditor of the testator, after 1832, commenced a suit against the executors, for the recovery of his debt, and obtained judgment therefor, the damages to be levied of the property of the testator in their hands to be administered, and the costs to be levied of the property of the defendants personally, if the estate of the testator in their hands was not sufficient for that purpose;

Held, that the judgment of W. was not a lien upon the lands which had been conveyed to D. and E., previous to the recovery of the judgment against the executors.

Held further, that if the debt, due from the testator to W., was an equitable lien upon the interest of the daughters in the lands, as legatees whose legacies were charged thereon, W. could not reach that interest until he had exhausted his remedy against the personal estate, of the decedent, which came to the hands of the executors.

Whether the debt, due from the testator to W., is an equitable lien upon the lands in the hands of D. and E., to the extent of the equitable claim of the legatees upon such lands for their unpaid legacies, in case the debt of W. cannot be obtained from the personal estate of the testator which came to the hands of his executors? Quære.

Where a judgment is recovered against executors, for a debt due from their testator, to be levied of the property which has come to their hands as executors, the re-

turn of an execution unsatisfied, which has been issued on such judgment, is not such an exhausting of the creditor's remedy against the executors, in relation to the personal estate which has come to their hands, as will authorize the filing of a bill against legatees, whose legacies were charged on the testator's real estate, to obtain satisfaction of the debt for which such judgment was recovered.

A creditor of a testator who had devised land to his two sons, who were his executors, having recovered a judgment against such executors, for the amount of his debt, and having by mistake caused the lands devised to them to be sold under an execution upon his judgment, supposing that the judgment was a lien thereon, and having bid in such lands at a price sufficient to satisfy the judgment, the chancellor made a decree setting aside the sale, and the sheriff's deed given in pursuance thereof, and declaring that the judgment remained in full force as against the executors ; and he directed an account to be taken of the personal estate of the testator which had come to their hands.

Land aliened in good faith, by an heir at law, or a devisee, before the commencement of a suit against him for the recovery of a debt due from the testator or intestate, is not liable, in the hands of the purchaser, for the payment of such debt.

All the heirs, or the devisees, of the decedent, who are liable for the payment of his debts, must be sued jointly, for the recovery of a debt due by such decedent. But if one of such heirs, or devisees, has died without leaving any property, his personal representative need not be made a party to the suit.

Where one of the devisees of the testator is a devisee of lands in another state only, it seems that he ought to be made a party to a suit against the other devisees, to obtain satisfaction of a debt due from the testator, if, by the laws of the state where such lands are situated, the devisee is liable for the debts of the testator.

A creditor cannot file a bill against the personal representatives, of his deceased debtor, and against the heirs, or devisees, jointly, to obtain satisfaction of his debt. But he must exhaust his remedy against the personal representatives in the first place ; or he must show, by his bill, that the personal estate was not sufficient to satisfy his debt, in order to authorize him to proceed against the heirs or devisees.

THIS was an appeal, by the defendants, from a decree of the vice chancellor of the sixth circuit. The facts in the case, as they appeared from the pleadings and proofs, were as follows : Jonathan Boyer died in January, 1828, seised of a valuable farm at Big Flats, in Chemung county, and of other real property in this state and in the state of Pennsylvania, and was possessed of some personal property. By his will he devised to his son Philip Boyer a lot of land, containing fifty acres, on the south side of the Tioga river, in the town of Big Flats; also a leasehold lot of fifty acres, depending upon the life of P. Michael, provided the devisee should pay to his eldest sister, Betsey, a legacy of

$500 within one year, and give her a horse, saddle and bridle, and a cow and six sheep. And he devised to his son, Samuel Boyer, his homestead farm, of about one hundred and twenty acres, being the residue of his real estate at Big Flats; and directed such devisee to pay to each of his four other daughters, Polly, Susannah, Mary and Catharine, a legacy of $500; payable when they should respectively arrive at the age of twenty-one. The testator bequeathed to his son John a legacy of $200, to be paid by his executors; after deducting therefrom the amount of John's indebtedness. And he devised to the lawful heirs of his son John, the farm in Pennsylvania whereon his said son then lived; and he charged those devisees with the payment of a legacy, of $300, to his granddaughter, E. Fritchley. The residue of his personal estate the testator directed his executors to sell, and to apply the proceeds thereof to the payment of his debts. And he appointed his sons Philip and Samuel his executors; who made probate of the will, and took out letters testamentary thereon, on the 4th of February, 1828. The principal, if not the only debts, which the testator was liable for at the time of his death, was a note of about $900, given by him to W. Wambaugh, the complainant in this suit, either as the principal debtor or as surety for his son Philip; and a bond of about $300, to C. Winans, which A. Bennett had signed with the testator as his surety, and which, after his death, the surety was compelled to pay.

On the 20th of January, 1830, Samuel Boyer sold and conveyed the farm devised to him, at Big Flats, to his brother Philip, for the consideration of $3800, with warranty; which conveyance was duly recorded on the 23d of the same month. And on the 15th of August, 1832, Philip Boyer conveyed the same farm to S. Poultney and W. M. Ellicott, together with all his other lands in that county; which last mentioned conveyance was recorded in December, 1832. In 1833, Wambaugh brought a suit against the executors, in the supreme court, upon the note of their testator, and in November of that year, obtained a judgment against them, as such executors, in the usual form, for $1459,16 damages, and $41,22 costs; to be levied of the goods and chattels of the testator, in their hands, if sufficient,

and if not, then the costs to be levied of the proper goods of the executors. An execution was afterwards issued upon this judgment, under which the sheriff advertised and sold the farm devised by the testator to S. Boyer, and other lands in which the defendants in that suit were supposed to have an interest under the will of the testator. And the said farm and the other lands were purchased by Wambaugh, for the price or sum of $1937; and the surplus proceeds of the sale were applied to the payment of Bennett's debt, with the consent of S. Boyer. The sheriff executed a deed to Wambaugh, as the purchaser at such sale, the 25th of October, 1837.

Catharine, one of the daughters of the testator, married A. H. Gates, Mary married S. Beard, Susannah married G. Vanderin, who subsequently died, and Polly married John Barnes, and died in 1834, leaving her husband surviving. In August, 1835, Gates and wife, Beard and wife, and Mrs. Vanderin commenced a suit in chancery, before the vice chancellor of the sixth circuit, against S. Boyer, P. Boyer, S. Poultney, W. M. Ellicott, E. Poultney, and W. Wambaugh, for the purpose of obtaining satisfaction of their legacies out of the lands devised to S. Boyer. P. Boyer afterwards died, and the suit was revived against his heirs at law. The subpœna in that suit was personally served upon S. Boyer and W. Wambaugh; but the other defendants being non-residents of the state, the bill was taken as confessed against them, as absentees. W. Wambaugh appeared and answered the bill in that suit, and the bill was taken as confessed against S. Boyer, for want of appearance. The cause was heard upon pleadings, and upon the master's report as to the rights of the absentees and of the infant children of P. Boyer. And on the 21st of September, 1838, the vice chancellor made a decree, dismissing the bill as to the defendant Wambaugh, without prejudice, and declaring that the legacies to the testator's daughters who were complainants in that suit, were due, and were an equitable charge upon the lands devised to S. Boyer, in whose hands soever the said lands might be; and that S. Boyer was also personally liable for the payment of such legacies. The decree also directed a sale of the lands devised to S. Boyer, by

Wambaugh v. Gates.

one of the masters of the court of chancery; that the master, out of the proceeds of the sale, pay to the complainants' solicitor his costs, and a reasonable counsel fee, and the fees of the master, and pay the costs of the guardian ad litem of the infant defendants; that such master pay the amounts due to the respective complainants for their legacies, with interest; and that he bring the residue of the proceeds of the sale into court, to abide the further order of the court. The decree also gave to the complainants the right to elect to proceed by execution, against S. Boyer personally, for the amount of their respective legacies and costs. It also provided for the protection of the supposed rights of the infant children of Mrs. Barnes; by directing that the amount of the legacy given to their mother, with interest, should be paid to them, out of the proceeds of the sale of the premises, if they should come in and claim the same upon the foot of that decree.

In December, 1838, W. Wambaugh filed his bill in this cause, against the complainants in the suit in which such decree was made, and against S. Boyer; setting forth the several matters above stated, in substance, except as to the conveyance of the devised premises, by S. Boyer to his brother Philip, and by the latter to Poultney and Ellicott. The bill also charged that S. Boyer and P. Boyer, after being advised that the complainant's proceeding to sell the devised premises, under his judgment, was irregular, suffered him to proceed to a sale in ignorance of his rights, and to expend moneys for the benefit of the estate of their testator, with the intention that he should be deceived and defrauded. The complainant, therefore, prayed that the complainants in the former suit might be restrained, by a decree of the court, from proceeding to a sale of the farm, devised to S. Boyer, under and by virtue of the decree in such former suit, and might be directed to relinquish all claim to the land, and to quiet the complainant's title thereto, or that they and their confederates might be decreed to pay him the amount of his judgment, with interest and costs, and the surplus moneys on his bid upon the sale, which had been paid to Bennett for the benefit of the estate; and that the amount of his claim might be decreed to be a lien upon

the premises, prior to the claim of the legatees under their decree, and to be first paid out of the proceeds of the sale of the premises; or for such other or further relief as might be proper, under the circumstances of the case.

The defendants in this suit, put in their joint and several answer to the complainant's bill; by which answer they admitted that in 1819 the complainant loaned to the testator $700, for which the testator gave his note, which note was also signed by his sons, Samuel and Philip, as his sureties, and was payable on demand with interest; but they stated, upon information and belief, except S. Boyer, who answered upon his own knowledge, that Philip Boyer afterwards assumed the payment of that note, by an arrangement with his father, and that a new note was afterwards, in 1822 or 1823, given by Philip Boyer to the complainant, for the amount of such original note, and of another demand against Philip, in which the testator joined as surety for his son. And the defendants stated, upon information and belief, that both notes signed by the testator were, joint notes, and were not joint and several. The defendant S. Boyer also stated in his answer, that the payment made by him, upon the note, as stated in the complainant's bill, in the year 1831 or 1832, was not paid by him as executor, but was paid out of his own private funds; although, at the special request of the complainant, it was endorsed upon the note as a payment by him as executor. The defendants therefore insisted, in their answer, that the cause of action, upon the note of the testator, was barred by the statute of limitations. They also set forth in their answer, the conveyance by S. Boyer of the premises devised to him, to P. Boyer, and the conveyance thereof by the latter to Poultney and Ellicott. The answer further stated that the suit against the executors was commenced by collusion with and at the request of P. Boyer, for the purpose of having the devised property sold under a judgment to be recovered thereon, to coerce a settlement with Poultney and Ellicott; in other words, to defraud them; and that the complainant purchased, at the sheriff's sale, with full knowledge of all the facts, and of the previous conveyances of the premises, for the purpose of coercing Poultney and Ellicott

to make a compromise with P. Boyer. The defendants also charged, in their answer, that the judgment, in the suit against the executors, was suffered to be taken by default for the same collusive purpose; and that such judgment was of no force or validity, as against the legatees of the testator; and that the complainant's claim was barred by the statute of limitations. The answer also stated that John Boyer, one of the devisees of the testator, was dead, and that he left several children who were still living. Most of the other facts stated in the bill were admitted by the answer. But the defendants, in their answer, insisted that the legatees were improperly joined with S. Boyer in the suit; and that if S. Boyer was a proper party, then that the heirs and the grantees of P. Boyer were also necessary and proper parties, and should have been made such parties; and they further insisted that the other devisees and legatees of the testator, or their legal representatives, were necessary parties, and were bound to contribute to the payment of the complainant's debt, if he had any. They also insisted that by the sale and conveyance of the devised premises, by S. Boyer, before the commencement of this suit, the complainant had lost the right to seek satisfaction of his demand by a sale of the devised estate for that purpose.

The cause was heard upon pleadings and proofs. The vice chancellor decided that before the legatees could recover their legacies out of the devised property, the debts of the testator must be paid; that by the recovery of a judgment against the executors, the complainant established his claim against the estate, and was legally entitled to payment out of the personal estate, if there was any, and if not, then out of the real estate; and that he was also entitled, as against the real estate, to the amount he paid Bennett out of the proceeds of the sale of the devised estate upon execution. He therefore directed a reference to a master, to compute the amount due upon the judgment, and for the payment to Bennett, with interest, and the several legacies due under the former decree; and that the master proceed to sell, *under the former decree*, the premises devised to S. Boyer, and that he pay, out of the proceeds of such sale, the

costs and expenses of the former suit, as directed by that decree, with interest on such costs and expenses, and the costs of the defendants' solicitor in this suit; that he then pay to the complainant in this suit the amount of his judgment, with interest and costs, the amount paid to Bennett with interest thereon, and his costs in this suit to be taxed; and that he then pay, out of the proceeds of the sale, the legacies decreed to be paid in the former suit.

*J. A. Collier*, for the appellants.

*Z. A. Leland*, for the respondent.

THE CHANCELLOR. The decree in this case is clearly erroneous, and inequitable, in relation to the rights of some of the defendants in the former suit, who are not parties to this suit. For, by directing the master to proceed and sell the premises, devised to S. Boyer, under the former decree, and to charge the debt of the present complainant upon the proceeds of such sale, for which debt the premises were not holden in the hands of Poultney and Ellicott, they are indirectly made liable not only for the payment of the complainant's debt, but also of all the costs of the litigation in this suit, to which they were not parties. The whole extent to which the devised property, in the hands of Poultney and Ellicott could be made liable, in any event, consistently with the principles of justice and equity, was the amount of the four legacies, which were mere equitable liens thereon in the hands of the devisee, together with the costs of the suit to compel payment of such legacies. And if the complainant in this suit has any claim to any part of the proceeds of the devised premises, to be applied in payment of his demands against the estate of the testator, it can only be upon that part thereof which is due to the legatees; as an interest carved out of the devised property for their benefit. That error, however, is one of which these appellants have no right to complain. And the defendants in the former suit, who are not parties to the decree in this case, and therefore not bound by it, must apply in the suit to which they are made par-

Wambaugh v. Gates.

ties, or in some other way, to stay any irregular and unconscientious proceeding in that suit, or under the decree made therein, to deprive them of their property, beyond the amount of the legacies and the costs; in consequence of the erroneous directions contained in the decree in this suit.

By the common law, lands aliened by the heir at law before suit brought, were not liable in the hands of bona fide purchasers thereof for the debts of the decedent. The same principle is distinctly declared by the provisions of the revised statutes. The 51st section of the article relative to suits against legatees, &c., (2 *R. S.* 455,) declares that lands aliened in good faith by any heir, before suit commenced against him, shall not be liable to execution, nor be in any manner affected by a decree against such heir. And the 61st section of the same article makes the same provision as to lands aliened by a devisee before suit brought against him. Neither the lands devised to Samuel Boyer, nor those devised to Philip Boyer, all of which lands had been aliened, to Poultney and Ellicott, long before the commencement of this or any other suit by the complainant, were liable for the payment of his debt. And the time for obtaining an order from the surrogate, to sell, had expired nearly six years before the filing of the bill in this case. The objection that the grantees of Philip Boyer were not made parties to this suit, therefore, is not well taken. For if they had been made defendants they might have pleaded the alienation to them of the lands devised to Philip, as well as those devised to Samuel, in bar of any claim upon them, or upon the lands so aliened.

But if Philip Boyer had been living, he would have been a necessary party. For the statute requires all the heirs, or all the devisees of the testator where the devisees are liable for his debts, to be sued jointly. (2 *R. S.* 454, § 42. *Id.* 456, § 60.) I infer from the bill and answer, however, that Philip died out of the state, and insolvent, and without leaving any property here. And if that was so, the objection that his personal representatives are not parties is not tenable. The children of John Boyer, to whom the farm in Pennsylvania was devised, might be deemed necessary parties, for the purpose of enforcing contribution, if it

appeared that, by the laws of that state, lands devised were liable for the simple contract debts of the testator. But there is not sufficient appearing, either in the bill or the answer, in this case, to enable me to say they were necessary parties; especially as it appears, from the answer of the defendants, that the children of John were not residents of this state. The legacy to John Boyer was not specifically charged upon the real estate, but was payable out of the personal estate merely. And the statute does not contemplate a joint proceeding against such a legatee and the heirs or devisees of the testator, even where the personal estate has been paid out to the legatee, leaving the debts unpaid. The personal representatives of John Boyer, therefore, could not be necessary parties to this suit, even if it was shown that the legacy to John Boyer had been paid to him out of the personal estate. And as he took no interest in the real estate of his father, either by devise or descent, he was not bound to contribute to the payment of the debts of his father, either as an heir or a devisee.

The three daughters of the testator, who are parties to this suit, if they are liable for the debt of the complainant, can only be charged with the payment of such debt upon the ground that their legacies were interests in the real estate, carved out of that part of it which was devised to their brother Samuel; and that they are devisees of an interest in the testator's real estate, to the extent of their several legacies, which are an equitable charge upon the farm devised to Samuel. But upon the same ground J. Barnes, who became entitled to his wife's legacy by survivorship, which legacy was also an equitable lien upon the same farm, is a necessary party to this suit; as his interest in the estate of the testator is equally bound to contribute to the payment of the complainant's debt. And the other daughter of the testator, who had a legacy of the same amount, payable out of the real estate devised to Philip, appears also to be a necessary party. Whether the interests of any of these legatees can be reached by the creditors, after the estate devised, and upon which their legacies were an equitable lien, had been aliened by the devisees, is a question which it is not necessary to decide at this

time. I am satisfied the bill in this cause is not properly framed, nor with the proper parties, to charge any of the defendants as devisees.

In the case of *Butts* v. *Genung*, (5 *Paige's Rep.* 254,) this court decided that, under the provisions of the revised statutes, a creditor of the decedent could not file a bill against the personal representatives and the heirs, or devisees, jointly, to obtain satisfaction of his debt. And that to entitle a creditor to a decree against the heirs or devisees, he must show by his bill, either that the personal estate of the decedent was not sufficient originally to pay the debts, or that such creditor had exhausted his remedy against the personal representatives, without being able to obtain satisfaction of his debt. The bill in the present case is wholly defective in these respects. It merely states that the testator, at the time of his death, was possessed of considerable personal estate, but without alleging that it was not sufficient to pay his debts. Nor is the want of a proper allegation in the bill, on this subject, supplied by any proof in the case. For aught that appears, the personal estate of the testator was sufficient to have paid all his debts, if it had been applied to that purpose by the executors. The devisees of the real estate, or of any interest therein, cannot therefore be called on to contribute any thing, for the payment of debts, until it is shown that the complainant has taken all proper steps to obtain satisfaction from the executors, or from the legatees of the personal property, if it has been paid over to them, leaving the debts unpaid. (2 *R. S.* 453, §§ 33, 36. · *Idem*, 455, §§ 56, 59.)

The issuing of the execution, upon the judgment, recovered against the executors, did not exhaust the remedy against them for personal estate which had come to their hands and had been misapplied by them. For, under that execution, the sheriff could only levy the debt out of the personal property which still remained in their hands, and which was the proper subject of sale upon execution. The return of such an execution unsatisfied, therefore, was no evidence that there was not in fact sufficient personal property, originally, to satisfy the judgment, or that the debt could not be recovered from the executors personally,

Wambaugh v. Gates.

if the complainant had taken the proper steps to call them to account before the surrogate. It does not appear, in this case, whether the execution was issued with or without an order of the surrogate. But as it would be illegal to issue it without such an order, the presumption of law is that an application was made to the surrogate, and that he made an order allowing such execution to issue, in conformity to the statutory provision on this subject. (2 R. S. 88, § 32.) The complainant, therefore, was bound to proceed against the surviving executor personally, for the satisfaction of his debt, before he could resort to the interests of these legatees in the real estate upon which their legacies were liens; if those interests could be reached in any way, under the circumstances of this case.

The decree of the vice chancellor was therefore clearly erroneous; and it must be reversed. The bill, as to all the appellants except Samuel Boyer, must be dismissed with costs, but without prejudice to their rights in any future litigation. But as to the defendant, Samuel Boyer, the surviving executor, I think there is sufficient in the pleadings and proofs to entitle the complainant to a decree for relief against him. It is very evident that the sale of the devised premises, upon the execution against the executors, and the bidding in of the property for an amount beyond what was due upon the judgment, when neither of the defendants in the judgment had any estate or interest in such property, either in their own rights or otherwise, were founded in mistake. It is true, the judgment against the defendants was personal, so far as the costs of the suit were concerned; and if the title to the devised premises had been in either of the defendants in such judgment, at the time of the docketing thereof, I am not prepared to say that the purchaser would not have obtained the legal title under that sale. But the answer and the proofs in this cause show that the whole of the devised property had been transferred, to Poultney and Ellicott, previous to the recovery of the judgment. The complainant, therefore, if he desires it, is entitled to a decree setting aside the sale of the devised premises, upon the execution, and the deed executed by the sheriff, and declaring the judgment in full force as against

S. Boyer, as the surviving executor, notwithstanding such sale; and referring it to a master to take an account of the personal estate of the testator, which came to the hands of the executors, or which they might have received and applied to the payment of the complainant's debt, by due diligence; and charging him with interest on the value of such estate, after the expiration of eighteen months from the death of the testator; to the end that upon the coming in of the report of the master, such a decree may be made against S. Boyer, for the satisfaction of the debts due to the complainant, as may be just; and reserving the question of costs between those parties, and all other questions and directions as to them or their rights, in the meantime.