# SUPREME COURT.

## Amos Hollister agt. Marvin Hollister.

Under the Revised Statutes, (2 *R. S.* 73,) a creditor, in a case where real estate
only of a non-resident intestate is situated in this state, but where *no assets*
existed in it at the time of his death, *or should afterwards come into the
state,* must be left to his remedy by action against the heirs.

And where it sufficiently appears that the deceased, at the time of his death,
resided in another state, and that he had no *personal assets* in this state at
the time of his death, and *none thereafter came into any county of the state,*
(although he may have had real estate here,) no surrogate here has or can
obtain jurisdiction to grant letters of administration. But, in such a case, it
was never the design or intention of the legislature to cut off all right to pros-
ecute the heir, or to deprive the creditor of his common law remedy, to en-
force his debt against the *real estate* so situated. (*See* 10 *Barb.* 247.)

An allegation of the issuing of letters of administration in another state, and
proceedings under them to a final disposition of the property of the decedent
in that state, is not sufficient to answer the requisitions of the statute here, to
enable the creditor to proceed against the heirs or devisees of the real estate,
under § 53 of the Revised Statutes.

It should therefore appear fully and conclusively upon the face of the complaint,
in such an action, (against the heirs and devisees,) that the deceased not
only left *no assets in this state* at the time of his death, but that none
have come to any county since. For in case of such assets, the surrogate

would have jurisdiction to grant letters either to the administrator in another state, or to the creditor here, and his remedy for the recovery of his debt would be plain and easy.

*Washington Special Term, September,* 1854.—DEMURRER to complaint.

The complaint avers that one Hartley Hollister, late of Pawlet, in the county of Rutland, Vermont, deceased, was indebted to plaintiff at the time of his decease in about the sum of $562. That the decedent died intestate, leaving defendant his sole heir, and Lucy Hollister, his widow, him surviving, in said Pawlet, where he resided at the time of his death; where, and in which county, and probate district, in said state of Vermont, his *estate and effects,* real and *personal,* were situated and located, and to be administered upon, except certain real estate situated in the towns of Hebron and Granville, in the state of New-York. That on or about the 20th day of June, 1843, letters of administration upon the estate of said decedent were *duly granted* by the probate court of Fairhaven, in the county of Rutland aforesaid, to the defendant and Lucy Hollister—said probate court " *being the proper and official court authorized by law to grant* said letters of administration upon and having jurisdiction of said estate, and its administration, and full power and authority by law to grant said letters of administration thereon, and to do the acts and take the proceedings thereon as hereinafter mentioned." That the defendant and said Lucy *duly qualified* and entered upon, and assumed the duties of their appointment, " and *took possession of the estate and effects* of said estate in said state of Vermont."

That after assuming their duties of administrator and administratrix, commissioners were *duly appointed to audit claims,* by this probate court, who had full power and jurisdiction to appoint said commissioners, and that the claim of plaintiff was duly presented and audited, and allowed by said administrator, commissioners, and probate court. " That the *entire personal estate* of said Hartley Hollister, and the real estate in Vermont, were and are *wholly and entirely inadequate* to pay and discharge the debts, including the debt of plaintiff.'

That the administrators duly and fully administered the estate of the intestate, and rendered an account of said estate, and of their administration, to said probate court; and the accounts, by an order or decree of said court, on or about the 16th of November, 1836, were finally settled and entered.

That on said final settlement, a distribution and dividend of the estate and effects were made of thirty-one cents on the dollar of the indebtedness of the decedent; and that plaintiff received the said thirty-one cents on the dollar to the amount of his debt; that the residue, with interest, is still wholly due to him

The complaint then describes the real estate of which the decedent was seized in this state at the time of his death, and avers that it was and is worth the sum of $700; that such estate descended to defendant; and, on or about the 20th of Nov. 1846, was sold, and conveyed by him to one James Johnson, for about the sum of $620, which sum he has received, and converted to his own use; and has removed to the state of Wisconsin, where he now resides.

The complaint prays relief, and that defendant may be compelled to pay the plaintiff his debt, or so much thereof as the avails of said real estate received by him will satisfy, with interest and costs.

To the complaint defendant demurs, setting out various grounds, which will be noticed in the opinion of the court.

B. F. Agan, *for plaintiff.*

Bishop & Hopkins, *for defendant.*

C. L. Allen, Justice.   By the 27th section of the act relative to granting letters of administration in cases of intestacy, (2 *R. S.* 73, 4*th ed.*, 258,) it is enacted, that the surrogate of each county shall have sole and exclusive power, within the county for which he may be appointed, to grant letters of administration of the goods, chattels, and credits of persons dying intestate in the following cases:—

1. Where the intestate, at or immediately previous to his

death, was an inhabitant of the county of such surrogate, in whatever place such death may have happened.

2. Where an intestate, not being an inhabitant of this state, shall die in the county of such surrogate, *leaving assets therein.*

3. Where an intestate, not being an inhabitant of this state, shall die out of the state, leaving assets in the county of such surrogate, and in no other county ; and,

4. Where an intestate, not being an inhabitant of this state; shall die out of the state, not leaving assets therein, but assets of such intestate shall thereafter come into the county of such surrogate.

These are the only cases in which the surrogate has jurisdiction to grant letters of administration. Previous to the Revised Statutes, and before the abolition of the court of probates, that tribunal had exclusive power to grant letters of administration, in cases where the intestate was not an inhabitant of the state at the time of his death, and had no assets therein, but died seized of real estate therein. (1 *R. L.* 444, §§ 1, 3, 15 ; *Western* agt. *Western,* 14 *J. R.* 428.)

By the act of 1823, the court of probates was abolished, and the powers of that court were made to devolve on the surrogates, with a qualification that the probate of wills and grant of administration, in relation to persons dying out of the state or in it, belonged to the surrogate of the county wherein the personal property, or any personal property of the deceased, might be at the time of his death.

In 1824, an act was passed, providing that, "in all cases of persons dying without this state, not being inhabitants thereof, *and without leaving any goods or chattels within this state,* letters of administration may be granted by the surrogate of any county in this state, in the manner and according to the powers heretofore used and exercised by the judge of the court of probates. (*Laws of* 1824, *ch.* 261.)

The Revised Statutes, §§ 23 and 24, did not incorporate this last provision, but confined the jurisdiction to cases enumerated in those sections. A creditor, therefore, in a case where real estate only of a non-resident intestate is situated in the state,

but where no assets existed at the time of his death, or should afterwards come into the state, must be left to his remedy by a suit against the heirs.

In the case of *Hart* agt. *Coltrain*, (19 *Wend*. 378,) this question was incidentally considered; and although Chief Justice BRONSON, in delivering the opinion of the court, did not exactly decide it,—as he was not called upon in that case to do so,—yet he intimates pretty strongly that no letters can be granted by the surrogate in such a case.

I conclude, therefore, that if it is sufficiently averred in the complaint, that the deceased resided, at the time of his death, in Vermont, and that he had no personal assets in this state at the time of his death, and none thereafter came into any county of the state, that then no surrogate had or could obtain jurisdiction to grant letters of administration.

If the decedent had any personal property here, or any came here after his death, then, I think, it would have been necessary to have taken out letters here, and, after exhausting these assets, to have applied for and obtained the usual order for leasing, mortgaging, or selling the real estate situated here, in the manner pointed out by the statute. The 31st section of the act (2 *R. S.* 75) declares, that where persons, not inhabitants of this state, shall die, leaving assets in the state, (and the same section undoubtedly applies where assets shall come into the state after his death,) and it shall appear that letters of administration on the same estate have been granted by competent authority in any other state, then the person so appointed, on producing such letters, shall be entitled to letters of administration in preference to creditors, or any other person, except the public administrator in the city of New-York; and the 27th section provides that, in cases of intestacy, if none of the relatives or guardians will accept the same, then the creditors of the deceased may apply, and the creditor first applying shall receive the letters.

The 53d section of the act (2 *R. S.* 109) enacts, that no suit shall be brought against the heirs or devisees of any real estate, in order to charge them with debts, within three years from the

time of granting letters testamentary, or of administration upon the estate of their testator or intestate. Section 32 (2 *R. S.* 452) declares the liability of the heirs and devisees; and section 33 asserts that such heirs shall not be liable, unless it shall appear that the personal assets of the deceased were not sufficient to pay and discharge the same, *or* that, after due proceeding before the proper surrogate's court and at law, the creditor has been unable to prosecute the same; and section 34 declares that if part of the debt has been collected out of the personal assets, the heir shall only be liable to pay the balance. Section 36 requires that the creditor, in an action against the heirs, shall show the facts and circumstances entitling him to bring his action.

In *Butts* agt. *Genung*, (5 *Paige Ch. R.* 254,) the chancellor remarked that, in cases of this kind, if the fact that the suit in this court has been brought before the expiration of three years after the granting of letters testamentary or of administration, appears upon the face of the bill, the heirs, or devisees, may demur.

The counsel for the defendant contends that the proceeding before the surrogate in some county in this state, to procure letters, is indispensable, whether assets are in or come to the state or not, and contends that the legislature have neglected to provide for a case where the surrogate has no jurisdiction. If this view be correct, a creditor would be left wholly remediless in a case like the present, and the heir would inherit the real estate without being required to pay the debts of his ancestor. It was never the design or intention of the legislature to cut off all right to prosecute the heir, or to deprive the creditor of his common law remedy to enforce his debt against the real estate so situated.

I know that it is said, in *Roe* agt. *Swezey*, (10 *Barb.* 247, 252,) that the statute omits to provide for the prosecution of an action against heirs at law and devisees in those cases where the surrogate has no jurisdiction over the personal estate of deceased non-resident debtors, and where no letters can issue, and that letters should actually issue, and that some suitable

person should be duly appointed, who has the power and inducement to look up and collect the assets, is indispensable for the protection of the heirs. It must be observed, however, in that case, that no letters whatever had been issued; and in *Stuart* agt. *Kissam*, (11 *Barb.* 271, 282,) the court reiterate the remark made by Chief Justice BRONSON in *Mersereau* agt. *Ryerss*, (2 *Com.* 261,) that the heir is not liable, unless it appear that the personal assets of the deceased were not sufficient to pay and discharge the debts; *or* that, after due proceedings before the surrogate's court and at law, the creditor has been unable to collect such debt from the personal representatives of the deceased, or from his next of kin, or legatees, (*see Wambaugh* agt. *Gates*, 11 *Paige*, 515; which case was affirmed by the court of appeals in November, 1847—1 *Howard's Court of Appeals Cases*, 247.)

I do not agree with the counsel for the plaintiff, that the issuing of letters in Vermont, and the proceedings under them, were sufficient to answer the requisitions of the statute here, to enable the plaintiff to proceed under § 53. Those letters would have enabled the administrator, perhaps, to have received moneys, and to take possession of property if unresisted; but would not have enabled him to sue for and recover property in the state without having taken out letters here. The cases are abundant, that foreign executors and administrators cannot sue in our courts, and cannot intermeddle with property here. (1 *John. Ch. R.* 153; 6 *id.* 353; 7 *id.* 45; 7 *Cow.* 64; 9 *Wend.* 426; *and see Story's Confl. Laws*, § 504 *to* 512, 13, 14, 16.)

It should therefore appear fully and conclusively upon the face of the complaint, that the deceased not only left no assets in the state at the time of his death, but that none have come to any county *since*. For in such cases the surrogate would have jurisdiction to grant letters, either to the administrator in Vermont, or to the plaintiff as creditor, and his remedy for the recovery of his debt would be plain and easy. There may have been crops growing on the land averred in the complaint to have been situated in this state at the time of the death of the decedent; these are declared by the act (2 *R. S.* § 6, *sub.* 5)

to be assets which shall go to the executor or administrator :— or there may have been other assets unsettled.

The complaint should have expressly negatived all such assets. It does, indeed, aver that defendant and Lucy Hollister, as administrator and administratrix, took possession of the estate and effects of said estate *in the state of Vermont*. It further avers, that the entire personal estate of said Hartley Hollister, and his real estate *in Vermont*, were, and are wholly and entirely inadequate and insufficient to pay and discharge the debts of said intestate. It also avers, that the defendant and said Lucy duly and fully administered the estate of said intestate, and rendered an account of the said estate, and of their administration, to said probate court *in Vermont*, and the same was, by an order or decree of said court, finally settled : that is, that they rendered an account of their doings *in Vermont*, as they would have had no authority to sue for or recover any assets in this state.

The complaint should have alleged not only that there were no assets of the decedent at the time of his death, which it does not wholly do, but that none ever came into the state after his death, and none ever were there to be administered upon, and that no letters of administration had ever been taken out, except in Vermont.

It is said, the presumption is to be indulged that the administrators had done their whole duty. Such presumption cannot prevail where it is resorted to for the purpose of making out a vital jurisdictional fact. (*Corwin* agt. *Merritt*, 3 *Barb.* 341.)

On this ground judgment must be entered for defendant, with leave for plaintiff to amend on the usual terms.

I have not examined, and come to any conclusion as to the remaining point taken by the defendant, namely; that the complaint does not show that the judge of probate in Vermont had jurisdiction, and does not show the powers and duties of foreign administrators.

It appears to be conceded, that § 161 of the Code does not apply to foreign judgments; and it would seem to follow, from this, that a general averment of jurisdiction of a foreign tribunal would not be sufficient. (3 *Barb.* 603.)

The plaintiff will have an opportunity of correcting this defect, if he deems it one, in his amended complaint. I am not to be understood at this time as passing any opinion upon the question.