1831.

Morris
v.
Mowatt.

---

## Morris and others *vs*, Mowatt and others.

Where a purchaser at a master's sale purchases under the assurance that he is to receive a perfect title, if such title cannot be given he will not be compelled to complete the purchase.

Neither can he be compelled to receive a good legal title, if it is liable to be litigated in consequence of some valid equitable claim which may be brought against it.

He is not obliged to accept a mere equitable title, or a title which is doubtful.

The purchaser has a right to require, under such circumstances, a title which is good both at law and in equity.

A judgment, as soon as it is docketed, becomes a general lien at law, on all the real estate of the debtor, not only as against himself, but also as against all other persons deriving title through or under him, subsequent to such judgment.

The lien, however, may, in some cases, be displaced by the execution of a power which overreaches the judgment.

But if a purchaser, acquiring a title under the execution of such power, has notice that the power is improperly or inequitably executed, a court of chancery will enforce the lien of the judgment as against such title.

So the lien of the judgment may be removed by a decree of the court of chancery, where the judgment debtor holds the legal estate in the land merely as a naked trustee for another, or where there is a subsisting equitable claim against the premises, which is prior in point of time, to the lien of the judgment.

Debts due by the testator are equitable liens upon his estate in the possession of his heirs or devisees, and prior in time to judgments recovered against them for their individual debts.

But the judgment creditors of the heirs or devisees have a right to ask for the application of the personal estate, in the first place, to the satisfaction of the debts due by the testator, or that they be substituted in the place of the creditors of the testator as to such personal estate.

Before foreclosure, a mortgagee cannot maintain ejectment to recover possession of the mortgaged premises, and he has no interest in such premises which can be sold on execution; and before an entry under his mortgage, he is not bound, as an assignee of the mortgagor, by a covenant running with the land.

The revised statutes have prescribed a new mode, by a bill in equity, of proceeding against heirs and devisees to obtain satisfaction of the debts due from the estate of the testator or intestate.

A final decree in such suit has a preference, as a lien on the estate descended or devised, over any judgment or decree obtained against the heir or devisee for his personal debt.

And a sale under an execution, issued upon such decree, will overreach, not only all judgments and decrees which have been recovered against such heir or devisee, but also all mortgages and alienations of the estate, subsequent to the commencement of the suit.

Whether a sale under execution issued on the decree is necessary to give the purchaser a legal title, sufficient to protect him at law against a sale under a previous judgment against the heir or devisee? Quære.

JOHN MOWATT, jun. by his will, made in 1820, devised a part of his real estate to his wife, during her widowhood; and after making certain pecuniary and specific bequests and legacies, he devised all the residue of his estate to his three sons, Charles Mowatt, James Mowatt, and John E. Mowatt, share and share alike. He also authorized his said three sons, who were appointed executors of the will, to sell any part of the real estate, for the payment of his debts or to carry into effect the uses and trusts of the will. After the death of J. Mowatt, jun. the complainants filed a bill against his executors, to obtain payment of a debt due them from the testator. In November, 1828, a final decree was made in that cause, establishing against the executors a debt of about $16000, and directing it to be paid out of the estate of the testator in their hands. Previous to the making of this decree, Charles Mowatt mortgaged his interest in a part of the real estate of his father to the Phœnix Fire Insurance Company, and several judgments had been recovered against the devisees respectively, for their own debts, which were liens on their interests in the estate so devised to them by their father, John Mowatt, jun. The complainants being unable to find personal estate in the hands of the executors to satisfy this decree, filed their bill in this cause against Charles and James Mowatt, as the devisees of their father, and also against the widow of the heir at law of J. E. Mowatt, the other devisee, who was then dead, to obtain satisfaction of their debt out of the real estate of their testator so devised to his three sons by his will. The Phœnix Fire Insurance Company and Robert Lenox, who held a mortgage against the estate, executed by the testator in his lifetime, were also made parties defend-

*1831.*

Morris
v.
Mowatt.

October 4th.

1831.

Morris
v.
Mowatt.

ants in the suit; but none of the judgment creditors of the devisees were made such parties. In November, 1830, a decretal order was made, referring it to a master to inquire and report, among other things, the amount due to the complainants, and the amount due to R. Lenox and the Phœnix Fire Insurance Company, on their mortgages respectively. This decretal order further authorized the master to take an account of the personal estate which belonged to the testator, at the time of his death, and of the administration thereof by the executors, if thereto requested by any of the parties to the suit. The master made a separate report, stating that he had been requested by the devisees to take an account of the personal estate, and of the administration thereof, and finding that the taking of that account, and the account of what was due to the Phœnix Fire Insurance Company, would produce great delay, he had, at the request of the complainants and of Lenox, consented to make a separate report as to the amount due them respectively. He thereupon reported a balance due to the complainants of $7582,22. He also reported that there was due to R. Lenox, on his mortgage, $17763,99, which was a specific and prior lien upon a house and lot in Pearl-street, in the city of New-York, which belonged to the testator at the time of his death. In January, 1831, a decretal order was made, founded on this separate report, directing the house and lot in Pearl-street, and five houses and lots on Franklin-street, to be sold by a master; and the master was directed, out of the proceeds of the house and lot in Pearl-street, to pay the amount due to Lenox, and to bring the residue of the proceeds of the sale into court.

Under this decretal order, the master put up and sold at auction the Pearl-street house and lot, and the same was purchased by Jacob S. Platt, for the price or sum of $33,250. The lot was sold by the master, upon the understanding that the purchaser was to have a good and perfect title to the lot, under the decretal order of the court. The purchaser paid down 10 per centum on the amount of his bid, at the time of the sale; but being afterwards advised by his counsel that his title under the decree would not be perfect,

he declined completing the purchase. The complainants thereupon presented a petition to the court to compel him to pay the residue of the purchase money, according to his bid, on the sale by the master.

*D. S. Jones,* for the complainants.

*T. Fessenden,* for the purchaser.

The CHANCELLOR. The purchaser in this case bid off the premises in question, at the master's sale, under the understanding, expressed at the time of the sale, that he was to have a perfect title under this decree; and if the master's deed will not give him such a title, he must be discharged from the obligation of his purchase; unless the parties interested in the sale can procure a discharge of the outstanding claims and incumbrances.

It is not necessary that I should particularly notice the mortgage given by two of the devisees to their mother, to secure her annuity. As she is dead, the annuity is at an end; and probably the arrears were paid up to the time of her death. If this was the only question in the cause, the master would be directed to inquire and ascertain whether any thing remained due on that mortgage; unless the parties elected to procure it to be cancelled on record.

The important question in this cause is as to the objection that there are outstanding judgments against each of the three devisees, and that the judgment creditors are not parties to this suit. The lot in question was not devised to the executors as such; but it was devised to the widow during her life or widowhood, with remainder to the three sons of the testator in fee, subject to the payment of debts, and subject to the power of the executers to sell for that purpose. Although the three sons are named in the will as executors, yet they do not take the real estate as such executors but as devisees thereof, and as tenants in common under the will. The judgments, therefore, which were afterwards rendered against them individually, became general liens on their several interests in the estate; and the question now presented is whether the purchaser under this decree will obtain a valid title, as against the lien of those judgments.

It is a well settled, principle in this court, that a purchaser, who has contracted for a good title, will not be compelled to accept a mere equitable title, of which he cannot avail himself in a suit at law, to recover the property, or to defend his possession, if necessary. (Abel v. Heathcote, 2 Ves. jun. 100.) It is equally well settled, that this court will uot compel a purchaser to accept a doubtful title. And even if he obtains a good legal title, yet if it is liable to be litigated in a court of chancery, in consequence of some valid equitable claim which may be brought against it, the purchaser will be discharged of his purchase. (*Grover* v. *Hugell*, 3 Russ. R. 428.) A sale, therefore, under a decree of this court. where the master, by the direction of the parties interested, professes to sell a perfect title, entitles the purchaser to a title which is good both at law and in equity. Is this then a title of that description ? The moment a judgment is docketed, it becomes, at law, a general lien on all the real estate of the debtor; not only as against himself, but also as against all other persons deriving title through or under him subsequently to such judgm ent. It affects the legal estate, and the lien of the judgment canno t, at law, be detached or defeated by any species of alienation whatsover. 1) Atk. on Conv. 505, 511.) The lien may indeed be displaced, in some cases, by the execution of a power which overreaches the judgment. But if the purchaser has notice that the power is improperly or inequitably executed, a court of chancery will enforce the lien of the judgment, even as against the title acquired under such power. The lien of a judgment may also be removed or displaced by the decree of this court where the judgment debtor holds the legal estate in the land merely as a naked trustee for another, or where there is a subsisting equitable claim against the premises, which is prior, in point of time, to the lien of the judgment. (Ex parte Howe, 1 Paige's R. 130. 1 Atk. Conv. 512.)

In the case under consideration, the debts due from the testator to these complainants and others, were equitable liens upon the estate devised to his sons, which liens are prior, in point of time, to the judgments recovered against the sons for their own private debts. If the judgment creditors had been made

parties to this suit, these prior equities could have been established in favor of the creditors of the testator. And the judgment creditors would then have been perpetually enjoined from proceeding at law against the property sold under the decree in this cause. Being parties to the suit, they would have been entitled to contest the validity of the complainant's claim against the estate of the testator; and if that was established, they would then have the right to ask for the application of the personal estate, in the first place, to the satisfaction of that claim, if any such personal estate could be found; or, at least, that they might be substituted in the place of the creditors of the testator, as to such personal estate, on the principle of marshalling securities, if the real estate was applied to the payment of the debts of the testator in the first instance. And if no personal estate remained, they would still have had the right to insist that the real estate should be applied in payment of the testator's debts, in the manner directed by the will : That is, that the Pearl Street property should not be sold for that purpose, until all the other property of the testator, both real and personal, had been exhausted. It will be seen at once, that this would have raised the question, whether the Franklin street lots, on which the Phœnix Fire Insurance Company have a mortgage from some of the devisees, or the Pearl Street house and lot, on which the lien of the judgments first attaches, should be sold to satisfy the complainant's claim.

What then will be the situation of the purchaser under this decree, as to the security of his title, either at law, or in equity ? At law, the judgment creditors may sell the legal estate by execution on their judgments; and the purchasers will acquire a legal title, which will overreach the sale under this decree. And the judgments being obtained before the creation of a lis pendens here, by the commencement of this suit, the court of chancery cannot protect the present purchaser, by any order or injunction made in this cause, to which the judgment creditors are not parties. He will therefore be compelled to file a bill, even to protect himself against this assertion of a legal right on the part of the judgment creditors. And upon that bill, in order to protect his equitable

right to this property, he will not only be compelled to prove the existence of the debt alleged to be due from the testator to the present complainants, but he will also be required to litigate every question which the judgment creditors might have raised as an objection to the sale of this particular portion of the real estate of the testator. The fact that Lenox, one of the present defendants, has a mortgage on the Pearl Street property, executed by the testator in his lifetime, does not materially alter the rights of the purchaser under this decretal order. It is now well settled in this state, that even at law, the mortgage is to be considered a mere security for the payment of a debt. Before foreclosure, the mortgagee has no interest in the land which can be sold on execution; and before entry under his mortgage, he is not bound, as an assignee of the mortgagor, by a covenant running with the land. (*Jackson* v. *Willard*, 4 John. R. 41. *Astor* v. *Hoyt*, 5 Wend.(603.) Under the provisions of the revised statutes, he cannot even maintain an ejectment to recover the possession of the mortgaged premises, before the mortgage has been legally foreclosed. (2 R. S. 312, § 57.)

The revised statutes have prescribed a new mode of proceeding, by a suit in this court, against heirs and devisees, to obtain satisfaction of debts due from the decedent. And every final decree rendered in such suit, against the heir or devisee, has a preference, as a lien on the estate descended or devised, over any judgment or decree obtained against the heir or devisee, for his own personal debt. A sale upon an execution under such a decree, will, at law, not only overreach such judgments, but will also overreach all mortgages and alienations of the estate, which are subsequent to the commencement of the suit in this court. (2 R. S. 454.) But the decretal order, under which the present sale took place, is not such a final decree as is contemplated in the statute. And probably to give the purchaser a perfect legal title, sufficient in a court of law to protect him against a sale under the previous judgment against the heir or devisee, it may be necessary to issue an execution on the decree, and to have the property sold by the sheriff, in the usual manner. On this

point, however, I do not mean to be understood as expressing any definitive opinion.

The conclusion at which I have arrived in this case is that the purchaser cannot obtain a perfect legal title under the conveyance from the master, sufficient to protect him against these judgments, which at law form a previous lien on the premises. And as it is admitted to be impossible to obtain releases of all the judgments, within any reasonable time, the purchaser must be discharged of his purchase, and the deposit must be restored to him. He is also entitled to interest on that deposit, and to the costs to which he has been subjected. At present, there is no fund under the control of the court out of which the interests and costs can be paid ; and as all parties have acted in perfect good faith in relation to this sale, the expenses must be paid out of the fund hereafter to be raised, if a second sale takes place. If no sale of the property is had, and no other way is provided for the payment, the charge must fall on the complainants personally. The question, as to the final disposition of this claim for interest and costs, is for the present reserved ; with liberty for the purchaser to apply hereafter by petition, as he shall be advised.

If all the parties to this suit consent to a re-sale of the property under the present decretal order, the master is to proceed and sell, subject to the legal and equitable rights of all persons, other than the parties in the cause and those who are bound by the decree. But in that case, the master should inform the bidders at such re-sale of the nature of the objections which exist against the title under such sale. If a re-sale, at the risk of the purchaser, is not deemed advisable by the parties interested in this matter, the complainants are to be at liberty to file a supplemental bill, for the purpose of bringing the judgment creditors before the court ; or to apply for a rehearing, and to vacate the decretal order of the seventh of January last, as they may be advised. If a receiver is necessary to preserve the property, and to secure the rents and profits in the meantime, one will be appointed, as a matter of course, upon a proper application, and on due notice to such parties as have a right to be heard on that question.