BLOODGOOD *vs.* BRUEN.

*In the matter of the Estate of* THOMAS H. SMITH.

THE will of the testator stated that he was desirous of making "a general disposition" of all his estate, real and personal; directed in the first place "all his just debts to be paid;" devised all his real estate to his "executors" on certain trusts, and among others in trust,—if his personal estate should be insufficient, "after payment of his debts," to pay legacies amounting to $400,000, to his children and their issue,—that his executors "should sell such part of the real estate, as would enable them to make up and provide the said several sums." He gave all the "rest, residue and remainder" of his estate to his executors, and also empowered them, "whenever they should think it expedient, to sell all or any part of his real estate," provided that the change of the character of the funds should not change the disposition thereof.

The executors having sold the real estate, were cited to account for the proceeds, by a creditor, the personal estate being insufficient for the payment of the debts. *Held,* That the Surrogate had power to call the executors to account for the proceeds of the sales, and to compel distribution in the same manner as if the proceeds had been originally personal property.

The distinction as to legal and equitable assets, no longer prevails as to the proceeds of the sale of realty, but such proceeds, when the real estate is sold by order of the Surrogate, are distributed in the same manner to creditors as the personal estate. The only effective remedy provided by statute for the specific application of the realty to the discharge of debts, is vested in the Surrogate's Court.

Where the will *directs* a conversion of the real into personal estate, the money arising from the sale becomes legal assets in the hands of the executor, for which he is bound to account before the Surrogate. If a mere *authority* to sell is given to the executor, he may bring the proceeds into the Surrogate's office for distribution, as the proceeds of the sale of real estate.

If the intention of the testator to charge the debts upon the real estate can be gathered from the will, and the executors have a power of sale under which they have acted, they may be cited to account and distribute,—the intention to charge the debts on the realty affecting the power so as to make it an imperative power in trust, tantamount to a peremptory order to sell in case of the personalty being insufficient to pay the debts.

If the real estate is ordered to be sold for the payment of *legacies*, the Sur-

rogate has power to compel distribution at the instance of *creditors* or legatees.

Several suits may proceed in the same court or in courts of concurrent jurisdiction, by plaintiffs seeking an account of executors and administrators, and payment of their respective claims; but when a decree for a general account and distribution is made in one suit, and the other creditors are authorized to come in under the decree and obtain satisfaction of their demands, the other suits will be stayed. But if provision is not made in the decree, for the payment of the claims of all creditors, or allowing them to apply for payment under the decree, such other creditors are not barred from proceeding in their own suits to a final decree.

TUCKER & CRAPO, *for Petitioner.*
WILLIAM M. EVARTS, *for Executor.*

THE SURROGATE. The testator commenced his will by stating that he was desirous of making " *a general disposition* " of all his estate, real and personal. He then, in the first place directed " *all his just debts to be paid,*" and in the next place devised unto his " *executors,*" all his real estate *in trust,* to collect and divide the rents among his four children during their respective lives, and on the death of the last survivor, to apportion and convey the estate to and among the issue of his children, *per stirpes:* And upon the further *trust,* that if his personal estate should not suffice, " after payment of his debts," to pay legacies amounting to $400,000, as subsequently provided in his will for the benefit of his children and their issue, then his executors " *should sell such part of the said real estate as would enable them to make up and provide the said several sums.*"

The testator also gave a power to his executors, " *whenever they should think it expedient, to sell all or any part of his real estate,*" with the restriction that no alteration or change of the funds from real to personal, or from personal to real, should change the disposition thereof, made in his will. He directed all the debts and incumbrances on his real estate to be paid out of his personal estate; gave legacies of $30,000 to each of his four children, and required the

executors to invest $280,000, and pay the income to his children for life, and on their death, the principal to their issue.

The question now presented is, whether, the executors having sold the real estate, they can be called to account in the Surrogate's Court, on the application of a creditor, the personal estate being insufficient for the payment of the debts.

Whatever doubt may once have existed, whether the proceeds of real estate devised to executors in trust to sell for the payment of legacies, were legal or equitable assets, it is now settled in England, that they are equitable assets; and, in a case where a devise of this kind was made, the property sold, and the legatee brought suit for his legacy in the Consistorial Court, a prohibition was granted by the Court of King's Bench. (*Barker* vs. *May*, 9 *B. & C.* 489; *Clay* vs. *Willis*, 1 *B. & C.* 364.)

But our statutes have largely changed the mode of enforcing the payment of the debts of deceased persons; and many of the rules which have prevailed at Common Law, and in the Spiritual Courts, are not applicable to our system of administering estates. The Surrogate is not only clothed with power to order the payment of debts out of the personalty; but, on the motion of the executor or administrator within three years after the grant of letters, or on the application of a creditor at any time after an account filed, he may proceed to order the sale of the real estate for the payment of debts. And the distinction as to legal and equitable assets, no longer prevails as to the proceeds of the sale of the realty; but they are distributed in the Surrogate's office in the same manner and course of administration, so far as respects debts, as the personal estate. (2 *R. S. 3d ed., p.* 169, § 42, *p.* 548, § 37; 3 *R. S. 2d ed., p.* 752, *note to* § 36.) The whole scope of the various statutory provisions on this subject, is obviously to place under the jurisdiction of the Surrogate the application of the entire estate of the decedent, real and personal, to the payment of debts, according to the same order and rule of dis-

tribution. Indeed, it would appear that the only effective remedy provided by the statute for the specific application of the realty to the discharge of debts, is now to be found in the Surrogate's Court. For though the heirs or devisees may be sued at law or in equity for the debts of the deceased, there is no longer a specific judgment or a decree for a sale of the real estate and distribution of the proceeds among all the creditors who may come in under the decree, according to the amount of their demands and their legal priorities, but each creditor must sue for himself, for the recovery of what the heirs or devisees are liable to pay him, after satisfying all legal priorities and the proportionate claims of other creditors. (*Butts* vs. *Gennung* 5 *Paige*, 254; *Morris* vs. *Mowatt*, 2 *Paige*, 586; *Wambaugh* vs. *Gates*, 11 *Paige*, 515.)

It is obvious, therefore, that when the executor has sold the real estate under a testamentary power, one of two results must take place: either that his sale and conveyance, give a good title and oust the Surrogate of his authority to compel a sale for the payment of debts; or, notwithstanding the execution of the power by the executor, the Surrogate may proceed at the instance of creditors to direct a sale, which will oust the title derived under the execution of the power. The latter result would be the proper legal conclusion; for a testamentary power is in the nature of a devise, and a devise cannot bar the authority of the Surrogate to order a sale of the realty. A title under an order of sale by the Surrogate, would prevail over a title by the devisee of a power. This affords a strong *a priori* argument why, when the executor has executed a power of sale under the will, he should be liable to account for the proceeds before the Surrogate.

In view, also, of the statutory provisions authorizing the Surrogate to decree the payment of debts and legacies, it has been held in the Court of Appeals that where the will directs an "out and out conversion" of the realty, the real estate upon the principle of equitable conversion is con-

verted, from the death of the testator, into personalty, and the money arising from the sale becomes *legal assets*, in the hands of the executor, for which he is bound to account as personal estate. (*Stagg* vs. *Jackson*, 2 *Bar. Ch. R.* 86, 1 *Comstock*, 206 ; *Kellett* vs. *Rathbun*, 4 *Paige*, 102 ; *Clark* vs. *Clark*, 8 *Paige*, 152.)

There are two statutory provisions applicable to the sale of real estate under a power, and the distribution of the proceeds.  By the 3d section of the act of April 17, 1822 (*Session Laws* 1822, *p.* 283), the Surrogate was authorized to call the executors to account for the proceeds of the sale of real estate, made by virtue of a power contained in a will, for the payment of debts or legacies.  The language of this provision embraced all sales " *authorized* to be made ;" and, as the phrase was altered at the re-enactment of the section in the Revised Statutes, from " *authorized* " to " *ordered* to be made " (2 *R. S.* 3d *ed.*, *p.* 172, § 61), there can be no doubt it was intended to confine the power of the Surrogate to compel an account, to the cases where a sale was *directed* or *ordered*, and to exclude the case of a sale under a mere naked discretionary power. This construction is further strengthened by the enactment of section 75 of chapter 460 of the laws of 1837, which provides that the proceeds of a sale of real estate, made in pursuance of an *authority* given by any last will, may be brought into the office of the Surrogate for distribution, in the same manner as the proceeds of the sale of real estate, sold by the Surrogate's order for the payment of debts, are distributed.

The single point to determine, then, is, whether the Surrogate has power to compel an account and distribution under the sixty-first section of the statute, which runs in the following words,—" Where, by any last will, a sale of real estate shall be ordered to be made, either for the payment of debts or legacies, the Surrogate in whose office such will was proved, shall have power to cite the executors in such will named, to account for the proceeds of the sales,

and to compel distribution thereof, and to make all neces-
sary orders and decrees therein, with the like power of en-
forcing them as if the said proceeds had been originally
personal property of said deceased, in the hands of an ad-
ministrator."

Now, it cannot be contended with any plausibility, that
there are any provisions in the will now under considera-
tion, directing or ordering the executors to sell the whole
real estate, and make an out and out conversion of all
the realty into personalty. Nor can it be denied, on the
other hand, that the will does contain express as well as
implied provisions for a sale of so much of the real es-
tate, as may be necessary for certain specific purposes.
Without entering into a detailed enumeration of the au-
thorities, I am satisfied that the effect of the introductory
words " *being desirous to make a general disposition of all
my estate, real and personal,*" and of the clause " *I direct
all my just debts to be paid,*" in connection with the devise of
" all the real estate," and " all the rest, residue and remain-
der " of his estate to the " *executors* " in trust, and the positive
order to sell enough of his real estate to raise the $400,000
legacies in case the personalty should be insufficient " *af-
ter the payment of debts,*"—that the effect, I say, of these
various provisions, is to make the subsequent general power
of sale, instead of a mere naked authority, an imperative
trust power; and—though, standing alone, it looks like a
simple power—to convert it into a positive direction or
order to sell for all the purposes contemplated by the will.
The ground I would put it upon is, that where the intention
of the testator to charge the debts upon the real estate can
be gathered from the will, and the executors have been
clothed with a power of sale, under which they have
acted, they may be cited to account and distribute, by
creditors ; the intention to charge the debts on the realty so
affecting the power of sale as to make it an imperative
power in trust, tantamount to a peremptory order to sell
in case the personalty be insufficient to discharge the debts.

I regard the effect of such provisions as substantially creating a *conditional* order to sell. (*Taylor* vs. *Taylor*, 6 *Simons*, 246; *Henvell* vs. *Whitaker*, 3 *Russ*, 343; *Bradhurst* vs. *Bradhurst*, 1 *Paige*, 331; *Harris* vs. *Fly*, 7 *Paige*, 425.)

But I think, apart from this position, that the language of the statute is broad enough to meet the present case. In *Stagg* vs. *Jackson*, the devise was to the executors "in trust whenever they shall see fit to sell all or any part of my real estate." Before the devise, the testator directed his debts to be paid, and nothing further was said about debts all through the will. In this case the debts are directed to be paid, and the devise is in trust to the executors to sell so much of the real estate as shall be sufficient to raise the sum of $400,000, in case there be not enough personalty, "after the payment of debts," to raise that amount. It seems to me incontrovertible that if the mandatory trust to sell to raise $400,000, for these legacies, effected, as it undoubtedly did, an equitable conversion of the real into personal estate to that extent, the whole basis of the Surrogate's jurisdiction is gained. The realty is converted into personalty; for the payment of legacies, it is true, but no matter at present for what purpose. It suffices that the conversion is directed, and has been in fact made by the executors. The will wrought this result at the testator's decease. He ordered his executors to sell to raise $400,000 legacies, and that made a conversion. What is to be done with the fund, and who have a right to call the executors to account and compel distribution, is another question, which I will now consider. It is too plain for disputation, that the legatees would possess that right. Everybody must concede that. But if the legatees possess the right, and creditors do not, what becomes of the estate? If the legatee can come in and take the funds, and the creditor must seek some other remedy, the conflict and confusion of rights and remedies will be perplexing. For example, the creditor might proceed to enforce the sale of the real estate by the order of the Surrogate, and yet the estate is already

sold, and the proceeds perhaps ·distributed. It seems obvious that the proper remedy to prevent such consequences would be to vest ·the Surrogate with general authority to call the executors to account, whenever the real estate, or any part of it, is *ordered* to be sold for any purpose whatever, *either* for the payment of debts *or* legacies; because such sale being *ordered*, the real estate becomes personal, and should be treated as such. Now, this is just what the statute has done. Its phraseology is in the alternative—whenever real estate shall be ordered to be sold " *either* for the payment of debts *or* legacies," the Surrogate shall have power to cite the executors to account, and to compel distribution, &c. The principle of the jurisdiction conferred is the conversion into personalty; and the exercise of the jurisdiction attained by such conversion, is in nowise limited, and does not depend upon the persons or relations of the parties who invoke the power of the court.

That the legacies directed to be raised out of the real estate are personal, and remain so, notwithstanding the direction that any change of funds, from real to personal, shall not change the *disposition thereof*, seems to me plain. This restriction is an appendant to the general *authority* to sell, lease, mortgage, and improve property, and not to the *order* to sell to raise legacies. And then again, the direction itself admits the " *change* " from real to personal, but says it shall not " *change the disposition* " of the property, but it shall stand to the same uses as if it had not been changed. These provisions palpably refer to the discretionary authority given to the executors, contained in this particular section of the will. If they did not, but were intended to apply to the land directed to be sold for the legacies, or to the legacies themselves, it would not affect the present question. It is beyond any man's power to direct that land ordered to be sold for legacies shall, when so sold, stand to the same uses as if not sold. Such a construction involves an absurdity.

The executor, however, sets up, that in a suit pending

in the Supreme Court, *Iddings* vs. *Bruen,* an account has been directed and the claims of creditors provided for. It remains for me, therefore, to consider whether such proceedings have been had in any other court of concurrent jurisdiction, as should bar the claimant from proceeding here. It seems to me that the rule in this respect is well settled. Creditors, distributees, and legatees, may bring suits for their own individual claims. There may be a hundred such suits at the same time, and if the executor or administrator admits assets, the suit passes to a decree in each case. If assets are not admitted so as to warrant a personal decree against the executor or administrator, an account becomes necessary; and then, for the purpose of preventing multiplicity of proceedings and unnecessary expense, the court may order a general account, and decree general distribution. In order to have a decree for a general account and distribution, it does not seem necessary, according to our practice, that the bill should be filed for the benefit of the complainant and all other parties in interest; but when assets are not admitted, and an account is requisite, such a decree may be made even where the creditor sues in his own name, and for his own debt only. (*Ross* vs. *Crary,* 1 *Paige,* 416. *Hallett* vs. *Hallett,* 2 *Paige,* 15.) When, either in such a suit or where the creditor sues not for his own debt alone, but for himself and all other creditors, a decree is obtained for account and distribution, this is in the nature of a decree for all the creditors; and the other creditors may come in under it, and obtain satisfaction of their demands equally with the plaintiff. There may be any number of such suits pending at the same time; but as a single decree for a general account and distribution meets the object of all of them, it follows that when one such decree is entered in one suit, the others ought to be stayed, their purposes having been accomplished. This is ordinarily done by stay of proceedings or injunction. (*In the matter of the*

*City Bank of Buffalo*, 10 *Paige*, 378.   *Rogers* vs. *King*, 8 *Paige*, 210.)

But until decree, each plaintiff is *dominus litis ;* and the sole question, therefore, is whether such a decree for account and distribution has been made in any suit against this executor, as will enable Bloodgood to come in, prove and recover his debt in due course of administration. The bill filed in the suit of *Iddings* v. *Bruen* was only for the protection of the rights of the complainant ; but, as already shown, that is not material, if subsequent provision for all the creditors of Thomas H. Smith has been properly made. The decree, in that case, after settling the amount due the complainant, proceeded to direct a sale of the real estate, under the power contained in the will, and the deposit of the proceeds in the name of the executor, to be withdrawn only for the purpose of the payments therein directed, except by order of the court. That decree also provided for the payment of the complainant's debt as established, " or so much of said debt as there shall be funds sufficient to pay, after paying to or reserving for the other creditors of the estate of Thomas H. Smith, if any there shall prove to be, the rateable proportion of the assets of said estate, to which such creditors, if any, are or may be entitled, in due course of administration of the said estate." It also contained a clause that the complainant and " the defendant, Herman Bruen, as executor of the last will and testament of Thomas H. Smith, may at any time, and from time to time, apply to this court, by motion or petition, upon the foot of this decree, for further directions in respect to the claims of any other creditor or creditors of the estate of Thomas H. Smith ; and in respect to any other matters as to which further directions may be proper, any of the parties are to be at liberty to apply in manner aforesaid,. as they shall be advised."

By an order made in the cause, March 8, 1850, it was provided that in the administration by Herman Bruen, as executor of Smith, of the proceeds of the sale of the real

2

estate, it should be his duty to reserve, as well for the creditors of the late firm of Thomas H. Smith & Son as for the other creditors mentioned in the previous decree, "the due and proper proportion of the assets of said estate, to which such partnership creditors might be entitled in due course of administration."

On the 7th of September, 1850, the executor presented his petition to the Supreme Court, in the suit of *Iddings* v. *Bruen*, asking for further directions " in respect of the claims of other creditors of the said estate, and in respect of any surplus of the said estate after the payment of said debts, to the end·that it may be ascertained what are the debts of said estate, and to whom payable, and the amount payable to each creditor, and the pro-rata distribution of said estate among said creditors ; and that it may also be ascertained, whether after the payment of the debts of said estate there will be any surplus of said estate, distributable under the will, and the amount of such surplus, &c :" and that, " by advertisement or otherwise under the order of the Court, the creditors of the estate may be ascertained ; and that it may be referred to a suitable referee to take proof concerning said debts, and concerning all claims upon the estate, and to pass the accounts of the petitioner under the decree in said cause, and to ascertain and determine the amount still further payable to H. E. D. under said decree, and the amount to be reserved by the petitioner, to meet or to be paid upon the other debts of or claims upon the estate, and to ascertain and determine the amount of any surplus which will remain in his hands after the payment of the debts of said estate."

Upon this petition, an order was made referring it to a referee " to ascertain who are or claim to be creditors of the estate of the said Thomas H. Smith, deceased ; to take proof ‚concerning their demands respectively ; to examine and pass the accounts of the said petitioner under the decree in this cause ; to ascertain ‘and determine the amount still further payable to H. E. D. under the said decree,

and the amount which ought to be reserved by the said petitioner, to meet or to be paid upon the other debts of or claims upon the estate of Thomas H. Smith, and to ascertain and determine whether, if, after the payment of the debts of the said estate, any and, if any, what surplus of the estate will remain in the hands of the petitioner for distribution under the will, &c." The order provided for the usual notice, and advertisement to creditors to exhibit their demands, and for payment to H. E. D. of his proportion in due course of administration.

This order was amended on the 23d day of September, 1850, so that the payments made to H. E. D. should not be allowed the executor as a conclusive credit, unless the same were properly made in due course of administration.

Under these orders, the petitioner, Bloodgood, has appeared before the referee and presented his claim. His counsel allege, that his appearance there was under protest. I think it immaterial whether he appeared under protest or not. He certainly had a right to appear and protect his interest; and if that proceeding is not one in which he can have a decree or order for the payment of his demand when established, his appearance cannot prejudice him so as to prevent his obtaining his rights in due course of law.

Neither the institution of the Iddings suit, nor the decree therein, nor the petition of the executor, nor the orders thereon, nor the subsequent proceedings before the referee, have ousted the Surrogate of his jurisdiction. None of these proceedings are formally instituted in behalf of creditors, and no provision is made in the decree or orders, for the payment of the claims of creditors, or allowing them to apply for payment under the decree. The frame of all the proceedings is precisely in consonance with what takes place in the suit of a creditor for his own benefit; and the account directed is merely for the purpose of ascertaining the amount due the plaintiff, and not for the purpose of distribution. I have looked into the prece-

dents, and find that the usual directions contained in a decree for the administration of an estate, are to take an account, and to advertise for creditors to come in and prove their debts; and the decree declares that such creditors as do not come in shall be excluded from the benefit of the decree; and also, expressly directs that the estate be applied in due course of administration, and that any of the parties may be at liberty to apply to the court under the decree. (2 *Smith, Ch. Pr.*, 276, 330.) These provisions are not made for the benefit of the creditors of Thomas H. Smith, in the proceedings before me. The suit instituted by Iddings, was not in form an administration suit; that character has not been given to it by any of the orders, or subsequent proceedings; and up to this moment, there is no formal provision or direction, giving the creditors a right to distribution. The pendency of that accounting, therefore,—it being, in its present shape, only for the benefit of certain, and not all the creditors,—is no reason why the other creditors should be inhibited from collecting their demands, and having the account necessary for that purpose, in a suit of their own institution and under their own control. If the executor had asked for a final accounting and a decree for distribution in the Iddings suit, and had obtained an order for that purpose, other proceedings would have been unnecessary and improper. He has not done so; and the petitioner in this case must, in order to recover his demand, prosecute the executor in some form or other. It is no answer to the present application that the executor must be exposed to an accounting whenever any creditor institutes suit; because such an evil as that can be obviated by the executor at any moment, by asking for a final account and distribution.

While I am clear that no such decree has been made in the Iddings suit as should deter any court having jurisdiction, from entertaining it, at the suit of any other creditor, and that the appearance of the creditors before the referee, and the proof of their debts, does not under the terms of

the order for an account, entitle them to relief in that proceeding, and therefore, does not exclude them from obtaining proper relief in the Supreme Court, or in any other court having jurisdiction; I am still disinclined, unless it shall be necessary, to put the executor to the expense and trouble of a double accounting. It is the privilege of the executor, on being directed to account, either before the Surrogate or in any other court, to ask for a final accounting and administration of the estate. If he fail to ask for and secure this privilege in a suit instituted by a creditor for his sole benefit, it is his own fault that he is put to inconvenience by the institution of a suit by another creditor. If it be the design and intention of the present reference and accounting pending in the Supreme Court, to have such a final accounting and administration of the estate, there is no good reason why it should not be formally expressed in some way or other, upon the face of the proceedings; and should that be done, then every consideration of propriety and convenience is in favor of the administration of the fund, and the settlement of the executor's accounts by the Supreme Court.

I have, therefore, come to the conclusion, to order the executor to account before me, unless within a reasonable time he procures such a modification of the order of September 7, 1850, in the Iddings suit, as shall in terms secure to the creditors of Thomas H. Smith, the right on proof of their claims, to compel payment in due course of administration.