Milligan, J.,
delivered the opinion of the Court.
The facts of this case are agreed; and they are substantially as follows: On the 27th of August, 1863, John Marshall made his promissory note for $630, payable, four months after date, to M. L. Andrews, or order, at the office of the Planter’s Bank of Tennessee, at Eranklin. The note was indorsed by M. L. Andrews and Win. Cummings, and afterwards discounted by the bank. It was not paid at maturity, and, after presentation, regularly protested for non-payment, and the indorsers duly notified thereof.
The note was held by the bank until the 14th of March, 1865, when, under a policy adopted by the bank, of giving, in all cases, its debtors the preference of paying their liabilities, in the issues of the bank; and, on their failing to do so, to third persons, who would pay the principal and interest in the notes of the bank, to pass such security to the party thus paying it. This note was assigned to the plaintiffs, who paid its nominal value to the bank in its own issues. Under this state of facts, the plaintiff brought his action against the defendants, to recover the amount of the note. The declaration formally set forth the facts above recited. The defendants demur; but no action was taken on the demurrer in the Court below; and now, under an agreement of the parties, none is necessary to be taken on it, here. Pend *382 ing the action, the defendants brought into the Court seven hundred and four dollars and forty-five cents, in the Planter’s Bank notes, procured by them since the assignment of the note, and moved the Court for a rule on the plaintiff, to compel him to receive the same in full satisfaction and discharge of the note; whereupon it was agreed, by the parties, if the Court should he of opinion that the defendants had the legal right to pay the note in the hands of the plaintiff, as assignee of the hank, in its own issues, then the rule should he made absolute; but if, on the contrary, in the opinion of the Court, no such right existed, then the rule should be discharged, and judgment entered against the defendants for the principal and interest of the note. The Court, under this agreed submission to his opinion, decided that the rule be made absolute, and directed the Clerk to deliver to the plaintiffs the notes of the Planters’ Bank, paid into Court by the defendants, in full satisfaction and discharge of the note sued on in this case. To reverse this decision of the Circuit Judge; an appeal in error is prosecuted to this Court. Bid his Honor, the Circuit Judge, err in thus deciding the case? This is the only question raised in the record.
The powers of corporations are delegated, and must, therefore, be construed strictly; but, as a rule in modern times, they may exercise such incidental powers as are necessary and proper to carry into effect express grants of power, which are not forbidden and contrary to the public laws and Constitution of the State. The right of the bank to assign the note in controversy, we apprehend, cannot be questioned. To hold other *383 wise would greatly embarrass tbe operations of almost every corporation in the State, whose charter, in terms, fail to confer this power..
The manner in which this note was parted with by the bank certainly is not customary in the conduct of banking operations. Banks seldom pass, by assignment, their individual securities in exchange for their own issue, unless they are driven to it by necessity; and we may reasonably infer from the policy of the bank, adopted to diminish its circulation as rapidly as possible, that this assignment was made under the pressure of necessity. And so far from its being illegal, we are not prepared to say, in times of great exigency, or pressing necessity, to redeem their issues, or to raise funds to meet sudden demands, it is not their duty to assign or hypothecate their securities for that purpose. They are bound, in some way, to redeem their notes, and to pay their debts. In cases of emergency, as, for instance, to procure more specie when an unexpected draft has been made upon them, or heavy deposits have been withdrawn, or large debts due to banking houses have unexpectedly been demanded, it is their duty, as well as their right, without special authority in their charter, to sell, if need be, hypothe-cate or assign their notes, bills or other securities, to meet the emergency and sustain the credit of the bank. The right of a banking corporation, under such circumstances, to sell any of their assets, not restricted by their charter, or by previous law, is as unlimited as an individual: Planters’ Bank vs. Sharp et al., 6 Howard, 318; Dana vs. The Bank of the United States, 5 *384 Watts and Sergt., 223. But, before tbe Act of 1860, ch. 27, under the enlargement of the law of set-off and cross-action, as provided in the Code, sec. 2918, there can be no doubt that the assignee of a note, bill of exchange, or other evidence of debt, bona fide transferred, could recover against the makers and in-dorsers thereof, unless they could, at or before the assignment, or indorsement, plead a tender, set-off, or payment. The makers and indorsers could not, after suit brought, by a bona fide holder or assignee, or even after they had notice of the assignment, buy up the notes or bills of the bank that made the assignment, and make them availing under the plea of set-off or tender. The plea of tender, upon well settled principles, must be before suit is brought; and if the plea is predicated of matter arising subsequently, it is competent to present it under the plea of puis darien continuance. The plea of set-off must be made of a mutual claim or demand, held by the defendant at the time of the assignment; or, at all events, and in all cases, at the commencement of the action: Law Library, vol. 61, 275; 2 Paige, 586, and authorities there cited; Keith vs. Smith, 1 Swan, 92; Byles on Bills, 274.
In this case, the note, when transferred, was over due, and it was the moral, as well as the legal duty, of the defendants, to have paid it at the time and place fixed in the face of the note. But they failed to discharge this duty; and the bank, after great indulgence and forbearance, transferred it to the plaintiffs, who gave the bank its nominal value in the bills *385 of the bank. Up to this time, and in fact, not until after suit was brought, did the defendants make any offer to pay it, either in the hills of the hank, or in any other manner.; and from the agreed state of facts, at the date of the assignment, under the general law, they had no legal or equitable set-off against it.
But the Act of 1860, cli. 27, sec. 30, interposes, and effects a radical change in the general law of set-off and payment, as applied to hanks, and hanking associations. Its language is as follows: “That in all cases of insolvency of any hank or banking institution, the hill-holders thereof shall be entitled to preference in payment, to all other creditors of such bank or association; and no transfer or assignment of any note, hill of exchange, or other evidence of debt, by the bank, shall prevent the debtor from paying the same in the hands of the assignee, in the currency of the bank.”
It is obvious, from the face of this section of the Statute, that the Legislature had two prominent considerations in view. The one was, in. cases of the insolvency of a bank or banking association, the bill-holders should be preferred to all other creditors; and the other was, to enable the debtors, in the event of a transfer or assignment of any note, bill of exchange, or other evidence of debt, from being defeated in his right to pay such security in the hands of the as-signee, in the currency of the bank making the transfer. The first clause of this section of the Statute, obviously applies to an insolvent condition of a bank, *386 and the right of the hill-holders, in such case, to assert a priority of satisfaction over all other creditors. The second, although included in the same section, and in fact, in the same sentence, has a different and far more extended application. It does not refer exclusively to a general assignment, made by a failing or insolvent banking institution, but to all transfers or assignments, made at any time, of a note, bill of exchange, or other evidence of debt, as well as a general assignment made in insolvency.
The provisions of the Statute are exceedingly broad and comprehensive, and we have no discretion, but to declare the law as we find it written. What, then, is its effect upon the case now under consideration? The note was executed and assigned by the bank, after the passage of the Statute, which was enacted expressly for the government and regulation of all the banks of the State; and as to all subsequent contracts and assignments made by the bank, the Act of 1860, ch. 27, becomes a part of the contract itself, and the ^assignee is as much bound to receive the .currency of the bank, in satisfaction of any note, bill of exchange, or other evidence of debt, which he holds by assignment, as the bank itself. He stands under the Statute and assignment, which is the law of the case, precisely in the same relation to the maker and in-dorsers, that the bank or original holder occupied, while such security was in its custody, with all the equities open to the debtors, that existed in their favor while such security was in the hands of the bank. But the law would be otherwise as to assign *387 ments prior to the passage of the Act of 1860. Each indorsement or assignment is a contract, and the Statute can have no application to such cases; and if applied to prior assignments, it would impair the obligation of the contract, and be unconstitutional and void. This question, under analogous facts and circumstances, arose in the case of Dundas et al. vs. Bawler et al., 3 McLean’s R., 397. That was a bill to foreclose a mortgage executed by the defendants, the 17th day of July, 1839, on a lot in Cincinnati, to secure the payment of a certain sum to one Shoenberger, who assigned it, and the accompanying notes for the same amount, to the Bank of the United States, on the first of September following. On the first of May, 1841, the bank assigned the mortgage and notes to the complainants, in trust, with other choses in action, to pay certain banks in the city and county of Philadelphia, for post notes of the Bank of the United States, which they had, amounting in the whole, to the 'sum of $5,078,444.94. The choses in action assigned, amounted to the sum of $7,772,250. As the claims should be collected, payment pro rata was required to be made to the creditor banks, and after full payment, the trustees were to account for and pay over to the Bank of the United States, the surplus that should remain in their hands. The defendants contended, that, under the Statute of Ohio, they had a right to pay off the mortgage and notes in the bills of the Bank of the United States, which were at a considerable discount. The Court held, as the assignment had been made in the State of Pennsylvania, it was governed by the laws *388 of that State, and the Statute of Ohio was not applicable to the contract of assignment by the bank; the law of the place where the assignment was made, governed it. In discussing the question, the learned Judge says: “It is conceded, where a note is given under a law which declares that the equities shall remain open between the original parties in the hands of a bona fide. assignee, no negotiation or change of place can set off this right of the maker. It is the law of the contract, and may be set up whenever suit shall be brought. And this holds in all instances where the local law enters into the contract, and becomes a part of it.”
It was further insisted, in the argument in that case, that the Act of 1842, which declares that the true intent and meaning of the ninth section of the Act of 1824, was, and is,. “to entitle any debtor of a bank or banker, to pay such debt in the notes of the bank or banker, against such bank or banker, or the assignee of either, whether such bank or banker retains an interest in the same, or has parted with all interest therein.”
In answer to this provision of the Statute, which is, in its import and meaning, similar to an Act of 1860, ch. 27, sec. 30, Judge McLean, in delivering the opinion, said: “The settled construction of the contract in the hands of a bona fide assignee and holder, by the Supreme Court of the State, is, that such holder is not bound to receive in discharge of the demand, the notes of the bank. The Statute would seem to be susceptible of no other construction. How, then, does the Act of 1842 affect the contract? ' By it the holder is bound to receive the notes of the bank in payment. *389 This, then, impairs the obligation of the contract. It provides, that the contract shall he discharged by the payment of a different medium from that which the Constitution secures. Every evidence of debt gives the holder the right to demand in payment, gold and silver, but the above Act declares that the payment shall be made in bank notes. If the law- had existed when the contract toas entered into, there would he no objection to it. The effect of the law would have been to restrain the negotiability of notes given to banks. The assignee, under the law, would have had no better right to demand, payment in gold and silver, than the bank; and this being the law, it would have entered into the contract, and constituted a part of it. It would be nothing more than having all agents open in a suit brought by the assignee, as they would have been in a suit brought by the bank.”
The principles of the case are recognized and applied in the case of Woodruff vs. Trapnall, 10 Howard, 190, and we think applicable to, and .decisive of, this case.
Affirm the judgment.