SOPHIA DENZLER

*v.*

ARTHUR O'KEEFE et al.

</div>

B. held lands in trust for the benefit of a married woman.   Afterwards, a mortgage on the same lands, given by his *cestui que trust* and her husband before the conveyance to him, was assigned to him on his paying it.   He conveyed the lands, pursuant to the direction of his *cestui que trust*, subject to the mortgage, and assigned the mortgage at the same time to his grantee.—*Held*, that

there was no merger of the mortgage in B.'s hands, and that judgments against him, recovered before his conveyance of the premises, were not liens thereon.

---

Bill to foreclose. On final hearing on pleadings and proofs.

*Mr. T. F. McCormick,* for complainant.

*Mr. G. Berry,* for answering defendants.

THE CHANCELLOR.

The complainant files her bill to foreclose a mortgage given in 1870 by Patrick O'Keefe and his wife to the Rahway Savings Institution on land in Rahway, for $1,000 and interest. The mortgage was assigned by the savings institution to Joseph Brunt, May 14th, 1875, and he assigned it to the complainant February 19th, 1880. On that date he conveyed the mortgaged premises to the complainant, subject to the mortgage, the amount due him whereon she then paid him. He at that time held the title to the land as he had done since February, 1874, in trust for Mrs. O'Keefe, and had, while he so held the title, paid the savings institution the money due on the mortgage, and taken the assignment of it before mentioned. The only consideration of the conveyance from him to the complainant appears to have been the amount due him from Mrs. O'Keefe for money paid by him for the mortgage. He gave to Mrs. O'Keefe in February, 1876, a declaration of trust, by which he acknowledged and declared that he held, and would continue to hold, the property in trust for her, and that he had no beneficial interest therein except to secure the repayment to him of $900, in the declaration of trust said to be for money advanced by him to buy the property at sheriff's sale to save it for her, but really, as it proves, the amount due him for money paid for the mortgage, and agreed to convey the property to her on receiving that money or security therefor. The declaration, however, was not recorded until October 15th, 1879. Various judgments were recovered against him, some against him alone and some against

Denzler v. O'Keefe.

him and his son, James H. Brunt, before that instrument
was recorded, one by McLaren and Raynor, May 19th, 1876, for
$93.20, and another by them December 10th, 1876, for $102.40,
both docketed in the court of common pleas on February 27th,
1877. On those judgments in favor of McLaren and Ray-
nor, execution had, when the conveyance was made by Brunt to
the complainant, been issued and levied on the land as the prop-
erty of Brunt. It appears that the complainant, when she took
her conveyance, was aware of the existence of those two judg-
ments, but not of any others affecting the title. Brunt agreed
with her that with part of the money which she paid him he
would pay off the McLaren and Raynor judgments, and cause
them to be assigned to her for her protection, and he did so.
When, under the direction of her attorney, she proceeded to sell
under those judgments, she found that executions on others of
the before-mentioned judgments had been issued after the con-
veyance to her, and levied on the property. She therefore
abandoned the plan of proceeding to sell under the judgments to
obtain a title clear of the judgments against the Brunts. She
subsequently filed her bill in this suit to foreclose her mortgage.
The answering defendants, who are some of the judgment creditors
of the Brunts, and Berry & Lupton, judgment creditors of Mrs.
O'Keefe, whose judgments were recovered and docketed in 1874,
insist that the complainant's mortgage was paid off by Brunt and
extinguished, and that even if it were not extinguished, it was merged
in the conveyance to the complainant. That it was not extinguished
when he paid the amount due on it to the savings institution, is
clear. He took an assignment of it, and it so became his own
property. Though he then held the title to the land, it was only
in trust for Mrs. O'Keefe, and as security for the payment to
him of the money he had paid for the mortgage. When the
complainant took title for the property she took it subject to the
mortgage, and took an assignment of it. The mortgage was
actually and apparently a valid and subsisting security. Her
object in taking it was to protect her title by means of recourse
to it if necessary. She evidently intended that there should be
no merger. It may be remarked that though the declaration of

trust was not recorded until 1879, the complainant had not been out of possession of the property, but lived on it during all the time that the title was held by the Brunts.   They had only the legal title, and no equitable title at any time, except as security for money paid, and they had been repaid all their advances except the amount due Joseph for money paid for the mortgage. Joseph Brunt and his son, James H., who afterwards released to him, bought the property in February, 1874, for Mrs. O'Keefe, at a sale thereof under judgments against her, and one or both held it in trust for her thereafter.   Their judgment creditors have no claim upon it in equity.   The lien of a judgment does not, in equity, attach to the mere legal title to the land as existing in the defendant at the time of its rendition, to the exclusion of a prior equitable title in a third person.   *Brown* v. *Pierce, 7 Wall. 205 ; Morris* v. *Mowatt, 2 Paige 586.*   If a purchaser under the judgment has notice of the equitable title at any time before the purchase and the actual payment of the money at the sheriff's sale, he cannot protect himself as a *bona fide* purchaser. *Ells* v. *Tousley, 1 Paige 280.*   There will be a decree for the complainant.   From the sale there will be excepted, of course, the land released by the savings institution and the land conveyed by the complainant to Arthur O'Keefe.