(67 Misc. Rep. 595.)

BUILDERS' MORTG. CO. v. BERKOWITZ et al.

(Supreme Court, Special Term, Kings County.   May 31, 1910.)

1. MORTGAGES (§ 530*)—FORECLOSURE—RESALE.

Where, after a foreclosure sale by a referee, the purchaser was by judicial decision relieved of his purchase because of a defective title, but previously the referee making the sale had embezzled the purchaser's payment, on a resale, the payment should be refunded out of the proceeds.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1549–1551; Dec. Dig. § 530.*]

2. MORTGAGES (§ 530*)—FORECLOSURE—PROCEEDS.

If the mortgagee should make such payment in the first instance, he might recover such amount out of the property, together with the amount of his mortgage.

[Ed. Note.—For other cases, see Mortgages, Dec. Dig. § 530.*]

Action by the Builders' Mortgage Company against Davis Berkowitz and others for the foreclosure of a mortgage. Motion for the discharge of a referee, and for the appointment of another referee. Motion granted.

W. C. Damron, for plaintiff.

Rollins & Rollins, for defendant Crescent Brick & Supply Co.

Joseph J. Schwartz, for defendant Zwerling.

George E. Minor, for purchaser.

CRANE, J.   This motion to discharge a referee appointed by the court to sell in foreclosure requires me to determine who must stand the loss occasioned by his defalcation. On August 20, 1908, the property in suit was sold under a judgment of foreclosure by a referee appointed therein for that purpose; the purchaser, Annie Wolf, paying to the referee the sum of $2,350, 10 per centum of the purchase price. Subsequently the purchaser rejected the title as defective, but upon motion made at Special Term her objections were overruled, and she was ordered to take title. Upon appeal, the Appellate Division (134 App. Div. 136, 118 N. Y. Supp. 804), reversed the Special Term, so that the purchaser has now been relieved of her purchase. Pending these proceedings the referee embezzled the deposit, and, not having given security, there is no fund in court out of which to repay to the purchaser the 10 per centum she advanced on the purchase. This motion is made by the plaintiff, mortgagee, for the appointment of a new referee to sell, and is met by all parties in interest with a demand that the order directing a resale also give direction about the repayment of $2,350 previously deposited.

The mortgagee and owner insist that the purchaser must look to the absconding referee. The purchaser claims a first lien upon the funds of a resale. Search has failed to discover any case where the purchase price could not be returned to the purchaser; but there are numerous cases where the costs, expenses, and fee for searching have been paid out of the funds to the purchaser on resale. Wiltsie on Mortgage Foreclosure, 664, says:

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"The former purchaser must be fully and liberally indemnified for all damages, costs, and expenses to which he has been subjected. These include the deposit or percentage advanced by him on the sale, the expense of investigating the title, the costs of the motion for repayment, if he is compelled to make a motion, the interest on his deposit, together with all the reasonable costs and expenses which he has paid or been subjected to in opposing the application for resale."

Sugden on Vendors (Am. Notes) p. 153, says:

"If the title prove bad, the purchaser will be paid out of the funds in the cause the costs of the orders for confirming him as purchaser, of the reference, and of the application, and the expense of investigating the title. If there are no funds in court, the plaintiff will, in a common case, be ordered to pay the purchaser in the first instance; but he will be at liberty to recover them over in the suit."

Dart on Vendors, p. 1350, has the following:

"The court will protect the purchaser against the parties to the action and all parties coming in under the decree."

These text-books have gathered their statements from the following cases:

Smith v. Nelson, 2 Simmons & Stuart, 557. The Vice Chancellor said:

"It did not seem consistent with principle that the right of the purchaser to be indemnified for expenses improperly occasioned to him by the suit should depend upon the circumstances whether there did or not happen to be funds in court at the time of the master's report."

He ordered the costs to be paid by the plaintiff to the purchaser, without prejudice to the question how much costs should ultimately be satisfied.

Berry v. Johnson, 2 Young & Collyer's Rep. 564, decided that where a resale was directed, and there were no available funds in court, the purchaser was entitled to be reimbursed by the plaintiff the costs of investigating the title and confirming the purchase. So, likewise, in Mullins v. Hussey, 35 Beav. 301, the purchaser was directed to be paid out of the funds.

Lechmere v. Brasier, 2 Jacobs & Walker's Rep. 287, cited in Raynor v. Selmes, 52 N. Y. 579, while it contains the phrase by Lord Eldon, "The rule in general is that the suitor must pay for the mistakes of the court," yet in that case no decision was made as to who should pay; the purchaser relinquishing his costs.

In this state we have the case of Morris v. Mowatt, 2 Paige, 586, 22 Am. Dec. 661, where, upon discharging the purchaser, the Chancellor said:

"The purchaser must be discharged of his purchase and the deposit must be restored to him. He is also entitled to interest on that deposit and to the costs to which he has been subjected. At present there is no fund under the control of the court out of which the interest and costs can be paid; and, as all the parties have acted in perfect good faith in relation to this sale, the expenses must be paid out of the fund hereafter to be raised, if a second sale takes place. If no sale of the property is had, and no other way is provided for payment, the charge must fall on the complainants personally."

In Kohler v. Kohler, 2 Edw. Ch. 69, the purchaser was discharged and held to be entitled to his costs; but, as there was no fund in court

out of which they could be paid, the complainants were directed to pay them in the first instance.

Most of these cases are cited with approval in Raynor v. Selmes, 52 N. Y. 579, where it was stated:

"On the sale of lands under the order of the court, if the title prove defective, the innocent purchaser must be repaid his proper expenses. This included the deposit or percentage paid by him on the sale, the expenses of investigating the title, and the costs of the motion for repayment, if he is put to a motion."

As the plaintiff in that case, however, was clearly negligent, the money was taken out of his share.

Likewise in Angel v. Clark, 21 App. Div. 339, 47 N. Y. Supp. 731, the above rule was followed, making the purchase money and expenses a first claim upon the funds arising on the resale.

If interest on the deposit money, costs of searching the title, and other expenses can be taken, in the first instance, out of the moneys arising on a resale, I can see no reason why the same rule should not apply to the repayment of the deposit money. Therefore, in granting this motion for the appointment of a referee, in place of the absconding referee, to make a resale, I shall order that out of the proceeds arising on this resale the purchaser shall be paid his deposit, with interest and costs and expenses; that, if the plaintiff repay these, as perhaps he should in the first instance, he may recover the amount out of the property, together with the amount of his mortgage. Naturally this means that ultimately the loss will fall upon the owner of the equity.

I can find in this case no evidence of negligence of any one of the parties which would enable me to charge up this amount to his share.