SUFFOLK SPECIAL TERM, December, 1850.  *Brown*, Justice.

### ROE *vs.* SWEZEY and others.

No suit can be brought against heirs, to charge them with the debts of their ancestor, within three years from the time of granting letters testamentary or of administration upon the estate of their ancestor.

A creditor can not commence a suit, and charge the heirs with the debts of their ancestor, at any moment after his death, upon alledging and proving that no letters have been issued, and that there are no personal assets upon which to administer.

Before a creditor can maintain an action against heirs, to charge them with the debt of their ancestor, he must establish these facts: 1. The granting of letters testamentary or of administration; 2. That three years have elapsed, after the granting of such letters and before the commencement of the suit; 3. That the defendant has inherited lands by descent from the debtor; 4. The want of sufficient personal assets, or the inability of the plaintiff to collect his debt, or some part thereof, after due proceedings before the proper surrogate, and at law.

The law which forbids the commencement of a suit against an heir, to charge him with the debts of his ancestor, until three years have elapsed since the granting of letters upon the estate of the ancestor, forbids a suit for any purpose.

Accordingly, *held*, that a creditor could not bring a suit against heirs in order to have the judgment of the court upon the question whether the defendants took the estate as heirs, or as purchasers, under a deed of trust.

THE complaint in this cause alledged that on the 1st of January, 1845, William Rose, the father of the defendants, made and delivered to the plaintiff a promissory note for $71,72, payable on demand, with interest; which note was still due and unpaid. That Rose died intestate, in November, 1847, leaving no personal property, and no real estate except his interest in two tracts of land described in the complaint. That William Rose, being seised in fee of those tracts, on the 22d day of December, 1841, made and executed to William Swezey, William Phillips and Isaac Overton, a deed thereof, upon the following trusts, viz. to receive the rents and profits of the said land during the lives of the grantor and Evelina his wife, and of the survivor of them, and to apply such rents and profits to the

Roe *v.* Swezey.

use of William Rose during his life; and, after his death, to the use of his said wife, if she should survive him, during her life, subject to the rules prescribed in article first, title second, of the first chapter of the second part of the revised statutes. And it was declared in and by said deed, that the estate thereby granted to the trustees should at the decease of the longest liver of the cestuis que trust cease and determine; and that such estate should thereupon descend to and vest in the heirs at law and next of kin of the said William Rose, agreeably to the rules prescribed in the revised statutes. The complaint alledged that Evelina, the wife of William Rose, survived her husband, and died in June, 1848; that the defendants, Mary, the wife of Charles Swezey, and Emily Rose, were the only children, heirs at law, and next of kin, of William Rose. That Rose left no personal property on which to administer, and that no letters of administration had ever been granted, to any person. That the plaintiff had called upon the defendants and requested them, as heirs at law of William Rose, to pay the amount due upon the promissory note above mentioned, but that they denied that they took any property by descent from their father, and insisted that they were entitled to the land above mentioned by purchase from him under and by virtue of the trust deed; and that the plaintiff had no claim against them, as heirs, or against the land. The plaintiff prayed for the judgment and adjudication of this court, that the land had descended to the defendants as heirs at law of William Rose, and that such lands were liable to the payment of the plaintiff's debt; that the defendants were bound to pay such debt, and that judgment might be rendered against them for the amount due, including interest, and costs of suit, to be paid out of the lands.

The defendants, by their answers, insisted that by the trust deed William Rose conveyed and disposed of all his estate and interest in the premises, and that the defendants had nothing by descent from him.

The cause was heard on pleadings and proofs.

Roe *v.* Swezey.

*George Miller*, for the plaintiff.

*William Wickham*, for the defendants.

BROWN, J.   This action is prosecuted against the defendants, as heirs at law of William Rose, deceased, who died intestate, to recover a simple contract debt, due and owing from the deceased in his lifetime, and at the time of his death, and from whom it is alledged the defendants have inherited certain lands by descent.   The action was commenced in January, 1850, the ancestor died on the 22d day of November, 1847, and the indebtedness is sufficiently established by the proof.   The questions in controversy are, 1st. Whether the defendants take the lands described in the complaint, by descent from William Rose, or by purchase, under the trust deed referred to in the pleadings.   And 2d. Whether the plaintiff, if the defendants take the lands by descent, has in other respects established his right to recover.   I propose briefly to examine the second of these questions only.

The 53d section of the statute concerning " the powers and duties of executors and administrators, in relation to the sale and disposition of the real estate of their testators, or intestates," is positive and peremptory, " that no suit shall be brought against the heirs or devisees of any real estate, in order to charge them with the debts of the testator, or intestate, within three years from the time of granting letters testamentary, or of administration, upon the estates of their testators, or intestates."   (2 *R. S.* 46.)   The charge in the complaint, that there is, and has been, no personal property of William Rose, on which to administer, does not overcome the obstacle, which is disclosed by the complaint, that no letters of administration have been issued upon his estate; and consequently that the three years spoken of in the statute, have not elapsed.   It was also admitted upon the trial, that the action was commenced within two years and three months from the time of the death of the debtor; so that if the plaintiff is right in his interpretation of the law, a creditor may commence his suit, and charge the heir with the

debts of the ancestor, at any moment after his death, upon alledging and proving that no letters had been issued, and that there were no personal assets upon which to administer. The heirs of any person who shall have died intestate, and the heirs and devisees of any person who shall have died after making his last will and testament, are, by the 32d section of the act concerning " suits by and against legatees, and against the next of kin, heirs, devisees," &c. (2 *R. S.* 369,) made liable for the debts of such person, to the extent of the estate, right and interest in the real estate, devised or descended. The 33d section provides, however, " that such heirs shall not be liable, unless it shall appear that the personal assets were not sufficient to pay and discharge the same : or that after due proceedings before the proper surrogate's court and at law, the creditor has been unable to collect his debt, or some part thereof, from the personal representatives of the deceased, or from his next of kin or legatees." These two statutes must be read in connection with each other. Taken together, they form a comprehensive and complete set of rules, to secure the appropriation of the real property of a deceased debtor ; to the payment and satisfaction of his debts, whenever the personal estate proves insufficient for that purpose ; and at the same time preserve the just rights of the heirs and devisees. The act first referred to, gives the surrogate power, upon the application of a personal representative, or of any creditor, to proceed to sell, or otherwise dispose of, the real estates of deceased debtors, and apply the proceeds to the payment of their debts. But this power must be exercised within the term of three years from the time of granting letters testamentary, or of administration, and not after that time. (*Sec.* 1 *and* 48, *Session Laws of* 1837, *p.* 531, § 40.) In the mean time the title to the estate descends to the heir or passes to the devisee, subject to be divested by a sale under a surrogate's order ; and it is settled upon authority, that a title acquired by a stranger, in good faith, and for a valuable consideration, under a conveyance from an heir or devisee, is subject during the three years to be defeated in like manner. (*Hyde* v. *Tanner*, 1 *Barb. S. C. Rep.* 75.) Mr. Justice Barculo, in

Roe *v.* Swezey.

his opinion in that case, says : " The several provisions of the statute, are entirely consistent with each other. They admit of but one construction. For the period of three years after the granting of letters testamentary, or of administration, the real estate of which the testator or intestate died seised, remains liable to be sold, under an order of the surrogate, for the payment of debts, in case of a deficiency of personal assets. This liability attaches to the land, not only in the hands of the heir or devisee, but in the hands of any subsequent purchaser. It is a kind of statutory lien, running with the land during the three years. After the expiration of that period, the heirs or devisees become first liable to suit, and the power of the surrogate ceases." The remedy, by an application to the surrogate, and the remedy, by an action against the heirs and devisees, are not concurrent. They do not exist together at one and the same time ; for if they did, one creditor might seek the relief afforded by the surrogate ; while another might, by his action against the heirs, invoke the interposition of this court, and the powers of both tribunals might thus be brought into conflict by an effort to exercise jurisdiction over the same subject, at the suit of different creditors, at the same time. This is precisely the contingency which the provisions of the statutes, to which I have referred, were designed to avoid. If the plaintiff can maintain his action, there is nothing to prevent any other creditor from suing out letters of administration before the surrogate of Suffolk county, and after filing his inventory, proceed to obtain the usual order for the sale of the lands in controversy; assuming, for the purpose of the argument, that the defendants take by descent, and not as purchasers, under the deed. Before a creditor can maintain his action against an heir, to charge him with the debt of his ancestor, he must establish the following facts : 1st. The granting of letters testamentary, or of administration. 2d. That three years have elapsed, after the time of granting such letters, and before the commencement of the action. 3d. That the defendant has inherited lands by descent from the debtor. 4th. The want of sufficient personal assets, or the inability of the plaintiff to collect his debt, or some part thereof,

after due proceedings before the proper surrogate, and at law. If the proof fails to make out either of these prerequisites, the action must also fail. (*Butts* v. *Genung*, 5 *Paige*, 254. *Mersereau* v. *Ryerss*, 3 *Comst.* 261.) That letters should be actually issued; that some suitable person should be duly appointed, who has the power and the inducement, to look up and collect the assets, is, in my judgment, indispensable for the protection of the heirs and devisees. Otherwise, who can safely say there are no assets, or assert what the real condition of the estate may be? The authority given by the letters to the executor, or to the administrator, and his inability to find sufficient assets to pay the debts, are material parts of the evidence, required by law, to establish the insufficiency of the personal estate, and render the real estate chargeable. The rigorous application of this rule imposes no hardship upon the creditor. His right to have the estate of his deceased debtor applied to the payment of the debts, is not placed at the arbitrary disposal of the person named as executor in the will—if there be one— or of the administrator, if there be no will. If they do not claim and exercise the power given them by the law, and take the necessary proceedings to effect a sale of the real estate, the creditor may quicken their action, by his own application to the proper surrogate for that purpose, according to sections 48, 49, 50, 51 and 52, of the act first referred to. (2 *R. S.* 46.) And if they omit to take out the necessary letters, and thus put the estate in process of adjustment, he will be entitled to the letters of administration, or to letters with the will annexed, himself, upon giving the requisite security for the due execution of the trust. His power over the lands, to the extent of whatever may be necessary to supply the deficiency of assets, will then be as complete as it is over the personal estate.

The statute omits to provide for the prosecution of an action against heirs at law, and devisees, in those cases where the surrogate has no jurisdiction over the personal estate of deceased non-resident debtors, and where no letters can issue. (2 *R. S.* 4, § 23. *Idem*, 16, § 23.) And this was employed by the coun-

sel for the plaintiff as an argument in favor of his position, that to enable a creditor to maintain an action against heirs and devisees, the issuing of letters was only necessary in those cases where the ancestor left personal property. The argument would be unanswerable and conclusive, if addressed to the legislature, upon a proposition to amend the law. But in a court of justice, upon a question as to what the law is, rather than what it should be, it amounts to nothing; for the court must administer the statute as it is written, and adopt such construction only as its language will justly authorize.

By the terms of the deed referred to in the pleadings, the estate therein granted was to terminate at the death of William Rose, and Evelina his wife, and the same was then to descend to, and vest in, his heirs at law. The plaintiff claims, that if he is premature in the commencement of his action, he is still entitled to have the judgment of this court upon the question, whether the defendants take the estate as heirs at law of William Rose, or as purchasers under the deed. This, I think, can not be done. The plaintiff is not now in a situation to have a judicial construction of this deed. He is not a party to, or connected with it, in any way, nor does he pretend to claim any thing under it. It was executed long before his debt was contracted, and not in fraud of his rights as a creditor; and it can not be regarded as an impediment in the way of the recovery of his debt, which he can claim to have removed. He seeks to recover his debt, out of the lands which have come to the defendants by descent from his debtor. That the defendants have nothing by descent, is one of the principal, and usual grounds of defense to actions of this kind. To suffer the plaintiff to try, and determine, whether any and what lands the defendants have by descent in one action, and the question of the ancestor's indebtedness, and the plaintiff's inability to collect his debt from the personal estate, in another, would be a course of proceeding not sanctioned by reason or authority. If I am right in the opinion that the law forbids the commencement of a suit against an heir at law, until the lapse of three years after the granting

of letters testamentary, or of administration for any purpose, it forbids it for all purposes whatever.

Judgment of nonsuit must be entered, with costs to the defendants.

