JAMES DUELL v. FRANCIS ALVORD.

SILAS DUELL, AS ASSIGNEE, ETC., OF JAMES DUELL, RESPONDENT, v. CHARLES G. ALVORD, AS ADMINISTRATOR, ETC., AND OTHERS, APPELLANTS.

*Issue of execution against the estate of a deceased judgment debtor—it cannot be allowed until after three years have elapsed since the issuing of letters testamentary or of administration — Code of Civil Procedure, sec. 1380.*

An order or decree granting leave to issue an execution upon a judgment recovered against a person who has died since the time of its recovery, cannot, under section 1380 of the Code of Civil Procedure, be made by the court from which it is to be issued, nor by the Surrogate's Court, which has granted letters testamentary or of administration upon the estate of the deceased judgment debtor, until the expiration of three years after letters testamentary or letters of administration have been duly granted upon the estate of the decedent.

*Kerr* v. *Kreuder* (28 Hun, 452) distinguished and not followed.

APPEALS from an order of the Onondaga Special Term, granted January eleventh, and from a decree of the surrogate of Onondaga county granted on the 16th day of January, 1886, " allowing an execution to issue upon the judgment heretofore docketed in this action in favor of the plaintiff and against the defendant, in the Onondaga county clerk's office, to the sheriff of the county of Onondaga as provided by section 1380 of the Code of Civil Procedure of the State of New York.

NOTE.— The following opinion was delivered upon the appeal from the decree of the surrogate, *In the Matter of the Petition of Silas Duell, etc.,* as in title above:

HARDIN, P. J.— According to the construction given to section 1380 of the Code of Civil Procedure, in *Duell* v. *Alvord,* decided at this term of the court in the opinion of HARDIN, P. J , the order of the surrogate was premature, three years not having elapsed from the time of granting letters of administration before the decree of the surrogate authorizing an execution on the judgment.

The surrogate had no power to grant the decree. That section prescribes, neither the order nor the decree can be made until the expiration of three years after letters testamentary or letters of administration have been duly granted upon the estate of the deceased. (See opinion in *Duell* v. *Alvord, supra.*)

Decree reversed, with ten dollars costs and disbursements.

BOARDMAN and FOLLETT, JJ., concurred.

James Duell recovered a judgment against Francis Alvord, in the Supreme Court, for the sum of $1,362.83 damages and costs, which judgment was entered in Onondaga county on the 7th day of May, 1877, and on the 4th of June, 1884, James Duell assigned and transferred to Silas Duell the judgment, and he became the owner and holder of the same. On the 10th day of February, 1884, Francis Alvord died, leaving him then surviving Caroline G. Alvord, his widow, and Charles G. Alvord and M. Frances Learned, his only next of kin and heirs-at-law.

On the 13th day of May, 1884, by the surrogate of Onondaga county, letters of administration were issued to Charles G. Alvord on the estate of Francis Alvord. The moving affidavits alleged that on the 24th day of April, 1877, " and while the indebtedness for which the said judgment was recovered still subsisted, the said Francis Alvord, in his lifetime, was possessed of certain real estate," situated in Onondaga county as given. The moving affidavit contains the following statement, viz.: "And that the debtor on said 24th day of April, 1877, fraudulently transferred the same to one Orson C. Gleason, his brother-in-law, who afterwards transferred the same to the wife of said Francis Alvord, the said Caroline G. Alvord, with intent thereby to hinder, delay and defraud the creditors of the said Francis Alvord, and especially the said James Duell," and Silas Duell, the assignee of the judgment; and the assignee, Silas Duell, states further in his affidavit that he is " desirous of having the said transfer adjudged fraudulent and void as against the creditors of the said Francis Alvord, especially the said James Duell and this deponent, and to have the same set aside and the said judgment above set forth adjudged a lien upon the premises hereinbefore described. That said judgment did not become a lien upon said real estate under section 1251 of the Code of Civil Procedure, except as above stated. And it is stated that the personal estate of Francis Alvord will not exceed the sum of $100. The affidavit also states "that said judgment is wholly unsatisfied and unpaid, and that no execution has ever been issued thereon."

To oppose the motion the affidavit of Orson C. Gleason was read, denying " that the said conveyances to him by Francis Alvord and by him to said Caroline G. Alvord were, or either of them was, with intent to hinder, delay or defraud the creditors of said Francis

Alvord, and especially the said James Duell or Silas Duell, or either of them. And this deponent avers that said conveyances were made in good faith and for valuable considerations," and numerous facts and circumstances are detailed to show the good faith of the transfers. Also, an affidavit of Caroline G. Alvord corroborating the affidavit of Gleason in the matters already referred to.

*Hiscock, Gifford & Doheney,* for the appellants.

*Goodelle & Nottingham,* for the respondent.

HARDIN P. J.:

We are of the opinion that there is no force in the criticism made to the certificate of the sheriff with respect to the service of the papers, wherein he refers to them as " the within summons and complaint."

*First.* No such objection appears by the record to have been taken at Special Term. Had the objection been taken there it might have been obviated. It is too late to raise it for the first time upon appeal, besides the order recites " on the reading of the affidavits and notice of motion, and considering the affidavits and the order and the appearances, it is obvious that Mr. Gifford has appeared as counsel for the parties opposing the motion, and that when the order recites " that he was counsel for the defendant in opposition thereto," it indicates that he appeared generally in opposition to the motion. We think the order ought not to be disturbed, because of the defect in the sheriff's certificate of service.

*Second.* We are of the opinion that the affidavit to the effect " that the judgment remains wholly or partly unsatisfied," answers the requirement of section 1381 of the Code of Civil Procedure. The section does not expressly require the affidavit to be made by a party to the judgment record. It was made by the assignee, who states positively, viz.: " That said judgment is wholly unsatisfied and unpaid," besides it does not appear that the affidavit was objected to as insufficient on that ground at the Special Term. The section from which we have quoted expressly authorizes the use of an affidavit to satisfy the court that the judgment remains unpaid. (*Wadley* v. *Davis,* 30 Hun, 570.) Again, in the opposing affidavits it is not alleged that the judgment has been paid. We think under

the circumstances the moving affidavit should be held sufficient in that regard.

*Third.* If the property of the judgment debtor was fraudulently conveyed with intent to hinder, delay and defraud the judgment creditor, such fraudulent conveyance would not prevent the judgment from being a lien upon the real estate. (*Chautauque Bank v. Risley,* 19 N. Y., 369.)

*Fourth.* Section 1251 of the Code of Civil Procedure declares a judgment to be a lien upon the debtor's property "which is docketed in a county clerk's office as prescribed," and declares that such judgment "binds, and is a charge upon for ten years after filing the judgment-roll and no longer, the real property and chattels real, in that county which the judgment debtor has at the time of so docketing it, or which he acquires at any time afterwards and within ten years."

That section is the same in substance as the provisions of the Revised Statutes. (2 R. S., 359, § 3 ; 3 R. S. [5th ed.], 637, § 4 ; and the Code of Pro., § 282.) The provision found in section 1380 of the Code of Civil Procedure in the language, viz.: "Where the lien of the judgment was created as prescribed in section twelve hundred and fifty-one of this act," we think refers to the manner of obtaining the lien, and not necessarily to the fact that the lien was obtained after the passage of section 1251, or under its provisions.

We are inclined to the opinion that the limitation found in section 1380 of the Code of Civil Procedure, and incorporated therein by virtue of chapter 542 of the Laws of 1879, declaring that "neither the order nor the decree can be made until the expiration of three years after letters testamentary or letters of administration have been duly granted upon the estate of the decedent," applies to the case in hand. The earlier part of the section provides that "the execution shall not be issued unless an order granting leave to issue it is procured from the court from which the execution is to be issued, and a decree to the same effect is procured from the Surrogate's Court of the State which has duly granted letters of administration or letters testamentary upon the estate of the deceased judgment debtor," which language prohibits the issuance of an execution without the order and decree, the order of the court in which the judgment is recovered, and the decree of the surrogate having jurisdiction of the estate of the deceased judg-

ment debtor. Effect may be given to the limitation contained in the earlier provision of the section by assuming that it deals with executions already issued in the hands of the sheriff at the time of the death of the judgment debtor. However it is not necessary, for the purpose of the case in hand, to pass upon the force and effect of the earlier part of the section.

We are of the opinion that the limitation found in that part of the section which comes from the amendment of 1879 must be obeyed, and that "neither the order or the decree can be made until the expiration of three years after letters testamentary or letters of administration have been duly granted upon the estate of the decedent." Our attention is directed to *Kerr* v. *Kreuder* (28 Hun, 452). The question here involved was not necessarily involved in the decision of that case. The judgment debtor died on the 15th of February, 1878, and it does not appear by the reported case that the attention of the court in pronouncing its decision of December, 1882, was called to the amendment of section 1380 found in the Laws of 1879. The language of BARNARD, P. J., would seem to indicate that he dealt only with the provisions of section 1380 as they stood prior to the amendment of 1879, and it clearly appears that he did not consider the question now before us.

Prior to the adoption of the Code if the judgment debtor died before execution sued out, an execution could only be had either against the personal representatives, or against heirs or terre-tenants upon *scire facias*. The writ of *scire facias* was abolished by the Code, and a provision was inserted in the Code that in case of the death of the judgment debtor after judgment, the heirs, devisees or legatees of the judgment debtors or tenants of real property owned by him, affected by the judgment, might, after the expiration of three years from the time of granting administration, be summoned to show cause why the judgment should not be enforced against the estate of the judgment debtor in their hands. It was provided that the personal representatives might be summoned anytime within a year after their appointment. (Old Code, § 376.)

In chapter 295 of the Laws of 1850 (found in 4 Edmund's Statutes, 634), it was provided that notwithstanding the death of the judgment debtor after judgment, execution might be issued against any real property " upon which such judgment shall be a lien either at

law or in equity," in the same manner and with the same effect as if he were living, "except that such execution cannot be issued within a year after the death of the defendant, nor in any case unless upon permission granted by the surrogate of the county who has jurisdiction to grant administration or letters testamentary on the estate of the deceased judgment debtor," and such surrogate was authorized to "make an order granting permission to issue such execution as aforesaid."

It was held in *Marine Bank of Chicago* v. *Van Brunt* (49 N. Y., 163) that the act of 1850 was not in conflict with the provisions of the Code, or inconsistent with the remedy given by it, and that it was accumulative, adding "another restraint to those already existing." Such was the condition of the law when section 1380 of the Code of Civil Procedure was adopted, and that section, as it appears by the note to it written by Mr. Throop, was modeled after the law of 1850.

In *Roe* v. *Swezey* (10 Barb., 247), decided in December, 1850, it was held that a suit to charge the debts of the ancestor upon property received by heirs-at-law could not be brought within three years after granting letters testamentary or of administration upon the estate of the ancestor, and that in such a suit it was essential to establish, among other things, "that three years have elapsed after the granting of such letters and before the commencement of the suit." That decision was based upon a construction of section 53, Revised Statutes (2 R. S., 109).

In June, 1885 (chap. 514), section 1380 of the Code of Civil Procedure was again amended by adding a provision that in case letters of administration "have not been granted within three years after his death by the Surrogate Court of the county in which decedent resided at the time of his death, or if the decedent resided out of the State at the time of his death, and letters testamentary or letters of administration have not been granted within the same time by the Surrogate Court of the county in which the property, upon which the judgment is a lien is situated, such court may grant the decree where it appears that the decedent did not leave any personal property within the State upon which to administer. In such case the lien of the judgment existing at the decedent's death continues for three years and six months as aforesaid."

From a consideration of the law antecedent to the passage of the amendment in 1879, and from a consideration of the section as it now stands, we are of the opinion that the Special Term was not authorized to direct an execution against the real estate of the judgment debtor in the case before us, as the letters of administration were granted on the 13th of May, 1884, and three years had not elapsed prior to the granting of the order brought before us for review.

It may be observed that section 1251 of the Code of Civil Procedure went into effect May 1, 1877, and remained in effect until May twenty-second of that year, when, by chapter 318 of the Laws of 1877, it was suspended until September 1, 1877. The section was, therefore, in force May 7, 1877, when the judgment against the deceased debtor was recovered, and it may properly be said that the judgment takes force and effect under and in pursuance of section 1251 of the Code of Civil Procedure.

Our attention was called by the respondent to the case of *Lichtenberg* v. *Herdtfelder* (5 Civil Pro. R., 426), with the suggestion that a construction of section 1380, which we have given, might in some cases prevent the prosecution of a creditor's action until the statute of limitations had run against it. Case cited follows section 1871 of the Code of Civil Procedure, which declares that an execution must be returned unsatisfied in whole or in part to enable a judgment creditor to maintain an action to compel the discovery of anything in an action.

It was also held in *Adsit* v. *Butler* (87 N. Y., 585) that in an action by a judgment creditor to set aside on the ground of fraud a conveyance of real estate by the debtor, the plaintiff must allege the issuing of an execution upon a judgment, and that the return on the execution unsatisfied is essential to give a court jurisdiction, or the action must be brought in aid of the execution outstanding. It was also held in that case that an allegation that the debtor is dead, and from the time of the rendition of the judgment until his death was wholly insolvent, are not sufficient to dispense with the necessity of the issuing of an execution.

The answer to the position of the respondent is found in the circumstance that section 1380 contains the provision extending the lien of the judgment existing at the decedent's death " for three

years and six months thereafter, notwithstanding the previous expiration of ten years from the filing of the judgment-roll." It may be also observed that the creditor of an estate, who seeks to have property applied in payment of his debt, which has been fraudulently transferred by the intestate, has certain rights and remedies provided by chapter 314 of the Laws of 1858. The fact that a conveyance which is fraudulent was made prior to the recovery of the judgment, if the claim existed previously, does not defeat the remedy of the judgment creditor to have such conveyance stricken down and it removed as an obstruction. (*Bank of Rondout* v. *Dreyfus*, 14 Weekly Dig., 160.)

We are of the opinion that the order of the Special Term was premature and should be reversed, with ten dollars costs and disbursements.

BOARDMAN and FOLLETT, JJ., concurred.

Order reversed, with ten dollars costs and disbursements.